HONEYWELL, INC v DEPARTMENT OF TREASURY

Docket No. 88934. Submitted November 13, 1986, at Grand Rapids. Decided January 12, 1988.

Honeywell, Inc., manufactures equipment for fire, security and energy management systems in Illinois and imports the equipment to Michigan where it is installed in construction sites as part of Honeywell's contracting business. In 1979, the Department of Treasury issued a notice of intent to assess for use tax on the value of the finished products shipped to Michigan in the amount of $19,697 for January 1, 1975, through June 30, 1978. Petitioner protested $16,715 of this amount to the State Board of Tax Appeals, the agency which then had jurisdiction over this case, claiming that the difference between the material cost and manufacturing cost of the finished products was not taxable. In 1980, the Department of Treasury issued a final assessment for the use tax of $19,697, plus accrued interest. Honeywell responded by filing a petition with the SBTA for a redetermination of the final assessment and a refund request for claimed use tax overpayments. An evidentiary hearing was held. In 1982, the case was transferred to the Tax Tribunal for decision. On October 29, 1985, the Tax Tribunal affirmed the final assessment. In doing so, the tribunal determined that the use tax is lawfully imposed on the value of the finished products brought into Michigan, including all manufacturing, fabricating, and processing costs. Honeywell appealed.

The Court of Appeals *held:*

An administrative rule provides that value, for purposes of the use tax in situations like this, includes all costs of manufacturing, fabricating and processing. An administrative interpretation of a statute is entitled to considerable weight unless the interpretation conflicts with the plain meaning of the statute. The Court found no conflict in this case.

Affirmed.

REFERENCES

Am Jur 2d, Administrative Law §§ 233-255.

Supreme Court's view as to weight and effect to be given, on subsequent judicial construction, to prior administrative construction of statute. 39 LEd 2d 942.

STATUTES — ADMINISTRATIVE LAW — JUDICIAL CONSTRUCTION.
An administrative interpretation of a statute is entitled to considerable weight unless the interpretation conflicts with the plain meaning of the statute.

*Warner, Norcross & Judd* (by *Joseph G. Scoville* and *Steven R. Heacock*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Richard R. Roesch* and *Thomas J. Kenny*, Assistant Attorneys General, for defendant.

Before: R. M. MAHER, P.J., and D. F. WALSH and C. STELL,* JJ.

PER CURIAM. Petitioner appeals as of right from a Michigan Tax Tribunal decision affirming a use tax assessment issued by the Department of Treasury for January 1, 1975, through June 30, 1978.

The underlying facts are not in dispute. Petitioner operates a mechanical and electrical contracting business in Michigan. Acting as a subcontractor on construction projects, petitioner bids for contracts involving the installation of fire, security, and energy management systems. If a bid is successful, petitioner orders the necessary project equipment from its manufacturing plant in Illinois. The manufacturing plant acquires raw materials from suppliers throughout the United States, then fabricates those materials into finished products. Finished products are shipped to petitioner's Michigan office for installation in accordance with contract specifications. The Illinois plant and Michigan office are deemed part of the same division of petitioner's corporate organizational structure.

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

In 1979, respondent issued a Notice of Intent to Assess for use tax on the value of the finished products shipped to Michigan in the amount of $19,697 for January 1, 1975, through June 30, 1978. Petitioner protested $16,715 of this amount to the State Board of Tax Appeals (SBTA), the agency which then had jurisdiction over this case, claiming that the difference between the material cost and manufacturing cost of the finished products was not taxable.

In 1980, respondent issued a final assessment for the use tax of $19,697, plus accrued interest. Petitioner responded by filing a petition with the SBTA for a redetermination of the final assessment and a refund request for claimed use tax overpayments. An evidentiary hearing was held. In 1982, the case was transferred to the Tax Tribunal for decision. On October 29, 1985, the Tax Tribunal affirmed the final assessment. In doing so, the tribunal determined that the use tax is lawfully imposed on the value of the finished products brought into Michigan, including all manufacturing, fabricating, and processing costs.

This Court's review of Tax Tribunal decisions is limited to determining whether they are authorized by law and whether the factual findings are supported by competent, material, and substantial evidence. *MCI Telecommunications Corp v Dep't of Treasury,* 136 Mich App 28; 355 NW2d 627 (1984), lv den 422 Mich 883 (1985), and Const 1963, art 6, § 28. The sole issue raised for our consideration is whether the Tax Tribunal correctly determined that the Use Tax Act, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.*, authorized taxing the value of the finished products.

The use tax is a complement to the sales tax and is designed to cover those transactions not covered by the General Sales Tax Act, MCL 205.51 *et seq.*;

MSA 7.521 *et seq. Master Craft Engineering, Inc v Dep't of Treasury,* 141 Mich App 56, 68; 366 NW2d 235 (1985). While the General Sales Tax Act levies a tax on the person making a "sale at retail," as the conduit or means of collecting a sales tax from customers, the use tax provides for a more direct collection of the tax from the consumer where the purchase is made out of state. *National Bank of Detroit v Dep't of Revenue,* 334 Mich 132, 141; 54 NW2d 278 (1952). The use tax is a tax for the privilege of using, storing and consuming tangible property brought from out of the state after it has come to rest. The tax rate is four percent of the "price" of the property. MCL 205.93; MSA 7.555(3).

The crucial issue in this case is the "price" of the finished products transferred from petitioner's Illinois plant to Michigan for use or consumption. It is not disputed that this transfer is subject to the use tax.

For the taxable period in question, "price" was defined as follows:

> "Price" means the aggregate value in money of any thing, or things, paid or delivered, or promised to be paid or delivered by a consumer to a seller in the consummation and complete performance of the transaction by which tangible personal property or services shall have been purchased or rented for storage, use or other consumption in this state, without any deduction therefrom on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid, or any other expense whatsoever. [1969 PA 214, MCL 205.92(f); MSA 7.555(2)(f).]

In order to clarify the tax treatment of consumers who also manufacture the goods consumed, respondent promulgated the following administrative rule in 1971:

(6) Where a manufacturer affixes his product to real estate for others, he qualifies as a contractor and shall remit use tax on the inventory value of the property at the time the property is converted to the contract which value shall include all costs of manufacturing, fabricating, and processing. [1979 AC, R 205.71.]

Respondent argues that deference should be given to its interpretation of the definition of "price." Petitioner responds that the rule is invalid as it exceeds the scope of the Legislature's definition. We agree with respondent and affirm the Tax Tribunal.

An administrative interpretation is entitled to considerable weight unless the interpretation conflicts with the plain meaning of the statute. Cf. *ACCO Industries, Inc v Dep't of Treasury,* 134 Mich App 316, 322; 350 NW2d 874 (1984), lv den 421 Mich 857 (1985). We find no conflict in this case. Petitioner was acting in a dual capacity of manufacturer and consumer. Although there was no "sale" in the traditional sense, fire, safety and energy management systems manufactured by petitioner were also consumed by petitioner in this state. In *Republic Steel Corp v McCastlain,* 240 Ark 979; 403 SW2d 90 (1966), the Supreme Court of Arkansas was presented with a similar situation. There, the plaintiff manufactured steel bars in Illinois and then transferred the bars to Arkansas for use in a construction project. Noting that the state's use tax was based on the privilege of storing, using or consuming tangible personal property, the court found that the transaction was subject to the tax as the plaintiff exercised the privilege of using the steel bars in the state. *Id.,* p 92. We believe that it was likewise the intention of our Legislature to impose a tax on all tangible personal property consumed in this state. As the

property consumed in this case was a finished product and not raw materials, respondent's interpretation of the definition of "price" fulfilled the Legislature's intent and, therefore, was authorized by the Legislature.

Further, we note that the Legislature amended the definition of price in 1982 to include the following language:

> The price of tangible personal property for affixation to real estate to a manufacturer, fabricator, or assembler of tangible personal property who qualifies as a construction contractor who affixes the tangible personal property to realty for others shall be equal to the amount of consideration or purchase price which any other person would have to pay if the other person acquired the tangible personal property from the manufacturer, fabricator, or assembler for affixation to real estate. [1982 PA 479, eff March 30, 1983.]

We interpret this amendment as merely clarifying the Legislature's intent to impose a use tax on transactions such as those at issue in this case. *ACCO Industries, Inc, supra.*

Affirmed.