SYNTEX LABORATORIES, INC v DEPARTMENT OF TREASURY

Docket No. 120264. Submitted December 18, 1990, at Lansing. Decided April 2, 1991, at 9:20 A.M.

Syntex Laboratories, Inc., petitioned the Tax Tribunal for a redetermination of an assessment of use tax by the Department of Treasury with regard to the petitioner's distribution of drug samples to licensed physicians in Michigan as part of its program of soliciting sales of prescription drugs intended for human use. The Tax Tribunal determined that the drug samples in question are prescription drugs, exempt from the imposition of use tax under Const 1963, art 9, § 8. The department appealed, alleging that the tax exemption of art 9, § 8 was intended to apply only to sales taxes and that even if the exemption applies to use taxes the phrase "prescription drugs" was included to limit the tax exemption only to situations in which a consumer is prescribed a drug by a physician or other licensed practitioner.

The Court of Appeals *held:*

The exemption provided in Const 1963, art 9, § 8 with regard to the imposition of sales and use taxes in the distribution of prescription drugs applies to the petitioner's distribution of drug samples as part of its process of solicitation of sales. Imposing a use tax on the petitioner's distribution of sample drugs violated the constitution.

As commonly understood, the phrase "prescription drugs for human use" as used in Const 1963, art 9, § 8 unambiguously exempts prescription drugs intended for human use from imposition of both sales and use taxes. The exemption furthers the purpose of eliminating the burden on low-income and elderly persons of a regressive tax on necessities of life.

Affirmed.

TAXATION — USE TAXES — EXEMPTIONS — PRESCRIPTION DRUGS FOR HUMAN USE.

The constitutional exemption from use tax of the sale or use of

REFERENCES

Am Jur 2d, Sales and Use Taxes §§ 90, 99, 101, 102.

See the Index to Annotations under Prescription Drugs; Sales and Use Taxes; Samples and Specimens.

prescription drugs for human use applies to a drug manufacturer's distribution of samples of prescription drugs intended for human use to licensed physicians in Michigan as part of its program to solicit sales of the drugs (Const 1963, art 9, § 8).

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, III, P.C., Robert F. Rhoades,* and *Joanne B. Faycurry*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Richard R. Roesch* and *Steven D. Hughey,* Assistant Attorneys General, for the respondent.

Before: SULLIVAN, P.J., and DOCTOROFF and MURPHY, JJ.

PER CURIAM. Respondent appeals as of right a Michigan Tax Tribunal judgment canceling a use tax assessment against petitioner and ordering a refund. At issue is whether imposing a use tax on petitioner's promotional use of sample drugs violates art 9, § 8 of our state constitution. The Tax Tribunal held that it does. We agree and, therefore, affirm.

The Tax Tribunal decided this case on the following stipulated facts. Petitioner Syntex Laboratories, a Delaware corporation, is a drug manufacturer with its principal place of business in Palo Alto, California. Petitioner's employees solicit sales of prescription drugs in Michigan. The solicitation process involves the distribution of drug samples to licensed physicians in Michigan by petitioner's employees. The drugs at issue in this case may not be lawfully dispensed to consumers without a prescription and are intended for human use.

Respondent Department of Treasury determined that petitioner's use of drug samples in this solicitation process was subject to the imposition of use

tax. On appeal, the Tax Tribunal disagreed, ruling that the drug samples are prescription drugs and thus, under art 9, § 8 of our state constitution, are exempt from the imposition of use tax.

Article 9, § 8 of our state constitution was amended by voter initiative in 1974 (Proposal c) to add, in pertinent part, the following emphasized provision:

> The Legislature shall not impose a sales tax on retailers at a rate of more than 4% of their gross taxable sales of tangible personal property.
> *No sales tax or use tax shall be charged or collected from and after January 1, 1975 on the sale or use of prescription drugs for human use, or on the sale or use of food for human consumption except in the case of prepared food intended for immediate consumption as defined by law.*

On appeal, respondent essentially makes a two-fold argument: (1) the tax exemption contained in art 9, § 8 was intended to apply only to *sales* taxes, and (2) even if the exemption applies to use taxes, the phrase "prescription drugs" was included to limit the tax exemption only to situations in which a consumer is prescribed a drug by a physician or other licensed practitioner. In a nutshell, respondent contends that art 9, § 8 was not intended to provide a tax exemption to a drug manufacturer who uses drug samples as part of its marketing activities.

Resolution of the issue in this case turns on our interpretation of art 9, § 8. In interpreting a constitutional provision, the primary rule of construction is that the common understanding of the words used governs. *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971); *Carman v Secretary of State,* 384 Mich 443, 452-453; 185 NW2d 1 (1971). The interpretation

that should be given the provision "is that which reasonable minds, the great mass of the people themselves, would give it." *Traverse City School Dist, supra,* p 405. Another rule of construction is that to clarify meaning, "the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered." *Id.* Resort to definitions of terms in a dictionary also is appropriate. See, e.g., *People v Bissonette,* 327 Mich 349, 356-357; 42 NW2d 113 (1950).

Before turning to the interpretation of the phrase "prescription drugs," we briefly address respondent's argument that the tax exemption contained in art 9, § 8 applies only to *sales* taxes.

Art 9, § 8 unambiguously exempts prescription drugs for human use from both sales and use taxes. The use tax is a complement to the sales tax and is designed to cover those transactions not covered by the General Sales Tax Act, MCL 205.51 *et seq.*; MSA 7.521 *et seq. Honeywell, Inc v Dep't of Treasury,* 167 Mich App 446, 448; 423 NW2d 223 (1988). The General Sales Tax Act levies a tax on a person making a "sale at retail" as the conduit or means of collecting a sales tax from customers, whereas the use tax provides for a more direct collection of the tax from the consumer where the purchase is made out of state. *Id.,* p 449.

We believe, then, that the "great mass of people themselves" would interpret the provision as eliminating both sales and use taxes. Accepting respondent's contention that the provision was intended to eliminate only a sales tax would mean that we would be accepting a "strained interpretation of an unambiguous statement of intent by the voters," which we decline to do. See *Durant v State Bd of Ed,* 424 Mich 364, 393; 381 NW2d 662 (1985).

Despite the unambiguous language of the tax exemption, respondent argues that the exemption was intended to apply only to sales taxes. Respondent relies on a single House of Representatives analysis of Proposal C released before voter approval of that proposal. House Legislative Analysis, Proposal C, October 17, 1974. Two of the arguments in favor of the proposal state:

> The sales tax is considered a regressive tax since it is applied to everyone at the same rate and takes a larger percentage of the earnings of low-income persons. However, studies have shown that a sales tax with food and drugs exempted is approximately proportional to income.
>
> A sales tax on food and drugs is particularly inequitable since these are items that everyone must buy, regardless of income. They are in no sense luxury items that could be omitted. This tax imposes a burden on the poor and elderly who spend a large proportion of their income on food and prescription medicines. Proposal C would allow all persons to receive 4% more for each dollar spent on food and 2% more for each dollar spent on prescription drugs.

Simply put, although the analysis refers only to sales taxes, the proposal included both sales and use taxes. In addition, the arguments set forth above support exempting food and prescription drugs from not only sales taxes, but also from use taxes.

Respondent also argues that the only reason the use tax exemption was included in art 9, § 8 was to prohibit future legislative attempts to circumvent the sales tax exemption by imposing a use tax on the same transaction. However, including the use tax exemption solely for that purpose was unnecessary. In this regard, we borrow from the rules of

statutory construction the rule that no word should be treated as surplusage or rendered nugatory if at all possible. *Bannan v Saginaw,* 120 Mich App 307, 320; 328 NW2d 35 (1982), aff'd 420 Mich 376; 362 NW2d 668 (1984). If we accepted respondent's argument, we would be treating as surplusage the inclusion of use taxes.

Our Supreme Court previously determined that the Legislature was not permitted to exceed a constitutional sales tax limitation under the guise of imposing a use tax. *Lockwood v Comm'r of Revenue,* 357 Mich 517; 98 NW2d 753 (1959). Therefore, the Legislature would not be permitted to circumvent the sales tax exemption by imposing a use tax on the same transaction. Because those who draft a constitution are presumed to know of existing law and judicial construction and to act in light of that knowledge, *People v Thompson,* 424 Mich 118, 129; 379 NW2d 49 (1985), we presume that the framers of Proposal C were aware of the *Lockwood* decision. If we are to treat the inclusion of use taxes in art 9, § 8 as more than mere surplusage, then we must interpret that inclusion to have been made for a reason other than merely prohibiting future legislative attempts to circumvent the sales tax exemption.

Having determined that art 9, § 8 exempts food and prescription drugs from both sales and use taxes, we turn to the interpretation of the phrase "prescription drugs." If the sample drugs petitioner uses in its solicitation process are "prescription drugs," then the use of those drugs is exempt from the imposition of use tax otherwise taxable under the Use Tax Act, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.*

Respondent argues that the drug samples are not "prescription drugs" because they were neither prescribed by a licensed physician nor pur-

chased by the ultimate consumer, relying on the definition of a "[p]rescription drug for human use" included in the Use Tax Act: "insulin or a drug dispensed by a licensed pharmacist to fill an individual prescription prescribed by a licensed physician or other licensed practitioner of the healing arts solely for the use of a designated person." MCL 205.94d(2); MSA 7.555(4d)(2). The drug samples do not satisfy the Use Tax Act definition because they were not dispensed by a pharmacist to fill a prescription prescribed by a physician. Respondent further argues that the Use Tax Act definition is consistent with the purpose or intent of the art 9, § 8 tax exemption.[1]

We reject respondent's interpretation of the phrase "prescription drugs."

First, we conclude that the commonly understood definition of "prescription drugs" includes the drug samples at issue in this case. A "prescription drug" is defined as "a drug that can be bought only as prescribed by a physician—compare over-the-counter" drug. *Webster's Third New International Dictionary, Unabridged Edition* (1961), p 1792. Also see *The American Heritage Dictionary, Second College Edition,* p 979. In turn, an "over-the-counter" drug is defined as "capable of being sold legally without the prescription of a physician, dentist, or veterinarian." *Webster's,* p 1611. These definitions focus on the nature of the drug, instead of on whether the drug has actually been dispensed pursuant to a prescription. Here, the parties stipulated that the drugs at issue may not

[1] Although respondent relies on the § 4d statutory definition of "prescription drugs," it does not argue that we are bound to follow that definition. Instead, respondent urges that the statutory definition is consistent with the provisions in art 9, § 8, and therefore is constitutionally permissible. Respondent implies that if the statutory definition restricts the constitutional sales and use tax exemption for "prescription drugs for human use," then it violates the constitution. See OAG, 1979-80, No 5601, p 486 (November 30, 1979).

be lawfully dispensed to consumers without a prescription. Therefore, they are prescription drugs within the common definition of a prescription drug. We further believe that the common definition is the best indicator of what is generally understood and the "meaning which [the term] would naturally convey to the popular mind." *Advisory Opinion on Constitutionality of 1978 PA 426,* 403 Mich 631, 639; 272 NW2d 495 (1978).

Also, the Public Health Code defines "[p]rescription drug" to include "[a] drug designated by the board as one which may only be dispensed pursuant to a prescription." MCL 333.17708(4)(c); MSA 14.15(17708)(4)(c). This definition, too, focuses on the nature of the drug.

Second, giving the term "prescription drug" its commonly understood definition furthers the purpose or intent of the sales and use tax exemption contained in art 9, § 8. The exemption apparently was adopted to eliminate the burden and inequity a regressive tax on food and drugs imposes on low-income and elderly persons. Respondent argues that exempting from use taxes a drug manufacturer who uses drug samples as part of its marketing activities does not further the purpose of the exemption. We disagree.

Imposing a use tax on the drug manufacturer would ultimately burden low-income and elderly persons. Either fewer drug samples would be made available to physicians who in turn would pass the samples on to their patients, which means the patients probably would have to purchase the prescribed drugs instead of receiving them gratuitously from their physicians, or the cost of the use tax on the drug samples would be passed on to patients through the cost of drugs which eventually would be purchased. Either way, the ultimate

consumer of these necessary items would pay. Therefore, giving the phrase "prescription drugs for human use" its commonly understood meaning results in a use tax exemption for the drug manufacturer which, in turn, furthers the purpose of the exemption—to eliminate a burden on low-income and elderly persons which results from a regressive tax on necessities of life.

In conclusion, the art 9, § 8 sales and use tax exemption for "prescription drugs" applies to petitioner's use of drug samples in its solicitation process. Therefore, imposing a use tax on petitioner's use of sample drugs violated the constitution.

Affirmed.