COMPUPHARM-LTC v DEPARTMENT OF TREASURY

Docket No. 194007. Submitted August 7, 1997, at Lansing. Decided September 2, 1997, at 9:10 A.M. Leave to appeal sought.

CompuPharm-LTC filed a petition in the Michigan Tax Tribunal challenging assessments of sales tax by the Department of Treasury on sales of over-the-counter drugs and medical supplies by the petitioner to nursing homes for use by patients enrolled in the Medicare, Medicaid, and Veterans Administration programs. The Tax Tribunal ruled against the petitioner, deciding that the drug sales did not qualify for the prescription drug exemption of Const 1963, art 9, § 8 and § 4g of the General Sales Tax Act, MCL 205.54g; MSA 7.525(7), and that the imposition of sales tax on the sales of items used by patients in the Medicare, Medicaid, and Veterans Administration programs did not constitute taxation on the federal government in violation of the Supremacy Clause of the United States Constitution or the governmental entity exemption of § 4(6) of the General Sales Tax Act, MCL 205.54(6); MSA 7.524(6). The petitioner appealed.

The Court of Appeals *held*:

1. In determining what constitutes a "prescription drug," for purposes of § 4(6) of the General Sales Tax Act, the relevant focus is on the nature of the drug, not on the transaction through which it is dispensed or acquired. Thus, despite the requirement in 1981 AACS, R 325.20903(1) that all medications given to patients in nursing homes be dispensed only by the written or verbal order of an attending physician, over-the-counter drugs dispensed to nursing home patients cannot be considered as prescription drugs on the basis of the way they are dispensed.

2. Sales to the United States government, its agencies, and instrumentalities and the State of Michigan, its departments, institutions, and political subdivisions are exempt from the sales tax pursuant to § 4(6) of the General Sales Tax Act. The nursing homes in this case are not agencies or instrumentalities of the federal or state government merely because they provide medical care to patients enrolled in government programs. The nursing homes are not instrumentalities of the federal government in the absence of evidence that they are chartered by Congress, that their officers are

appointed by Congress, that they are subject to Congressional oversight, and that they can be characterized as virtual arms of the government.

Affirmed.

1. TAXATION — SALES TAX — PRESCRIPTION DRUG EXEMPTION — OVER-THE-COUNTER DRUGS.

The prescription drug exemption from the sales tax focuses on the nature of the drug, not on the transaction by which it is dispensed or acquired, and requires that the drug be one that can be bought only as prescribed by a physician; accordingly, a sale of an over-the-counter drug is not exempt from the sales tax even where the drug is dispensed pursuant to a physician's prescription (Const 1963, art 9, § 8; MCL 205.54g; MSA 7.525[7]).

2. TAXATION — SALES TAX — GOVERNMENTAL ENTITY EXEMPTION — NURSING HOMES.

A nursing home that provides medical care to a patient enrolled in a federal or state medical program does not become a governmental agency or instrumentality that is exempt from the sales tax merely because it provides such care (MCL 205.54[6]; MSA 7.524[6]).

*Howard & Howard Attorneys* (by *Patrick R. Van Tiflin, Michele L. Halloran,* and *Kim D. Crooks*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Michael R. Bell,* Assistant Attorney General, for the respondent.

Before: CORRIGAN, C.J., and MARKEY and MARKMAN, JJ.

MARKMAN, J. Petitioner appeals as of right an order of the Michigan Tax Tribunal. Petitioner is a pharmaceutical corporation that sells medical supplies and drugs to nursing homes. Const 1963, art 9, § 8 and MCL 205.54g(1); MSA 7.525(7)(1) exempt sales of prescription drugs from sales tax. Petitioner claimed that its sales of over-the-counter drugs to nursing home patients were exempt from the Michigan sales tax

because they could only be dispensed to those patients under state Medicaid rules with a physician's prescription. Petitioner also asserted that the imposition of a sales tax on drugs and medical supplies sold to patients covered by Medicaid, Medicare, or Veteran's Administration programs constitutes the imposition of a tax on the federal government, which is prohibited by the Supremacy Clause of the United States Constitution and MCL 205.54(6); MSA 7.524(6). The Tax Tribunal affirmed the sales tax assessment and found that the imposition of sales tax on Medicare, Medicaid, and Veteran's Administration program patients did not constitute an unconstitutional tax on the federal government. We affirm.

Const 1963, art 9, § 8 and § 4g of the General Sales Tax Act, MCL 205.54g; MSA 7.525(7), expressly exempt "prescription drugs" from sales tax. Section 4g(2) defines "prescription drugs" to mean "insulin or drugs dispensed by a licensed pharmacist to fill individual prescriptions prescribed by a licensed physician or other licensed practitioner of the healing arts solely for the use of a designated person."[1] Petitioner argues that this definition mandates what effectively is a transactional approach to determining what constitutes a "prescription drug." Petitioner contends that to fall within the scope of the term, a substance need only be (1) a drug, (2) dispensed by a licensed pharmacist, (3) prescribed by a licensed health-care professional, and (4) for the use of a particular desig-

---

[1] This section was amended in 1992, after the tax period at issue. The amendment rewrote the section to include the Public Health Code definition of "licensed health care professional" found at MCL 333.21005; MSA 14.15(21005) and to include oxygen as a prescription drug. 1992 PA 266, effective December 14, 1992.

nated person. This argument is predicated upon 1981 AACS, R 325.20903(1), which mandates that all medications given to patients in nursing homes be dispensed only by the written or verbal order of the attending physician.

However, this argument fails to take into consideration this Court's decision in *Syntex Laboratories, Inc v Dep't of Treasury*, 188 Mich App 383; 470 NW2d 665 (1991), and the purpose of the "prescription drug" provision and also necessitates an unwarrantedly expansive interpretation of the definition of "prescription drug." In *Syntex*, this Court addressed the question whether prescription drugs given to physicians as free samples were exempt from the state use tax. The Use Tax Act defined "prescription drug" as "insulin or a drug dispensed by a licensed pharmacist to fill an individual prescription prescribed by a licensed physician . . . solely for the use of a designated person." *Id.* at 389. On the basis of this definition, the respondent argued that the drug samples "were not 'prescription drugs' because they were neither prescribed by a licensed physician nor purchased by the ultimate consumer." This Court rejected that interpretation and stated:

> [W]e conclude that the commonly understood definition of "prescription drugs" includes the drug samples at issue in this case. A "prescription drug" is defined as "a drug that can be bought only as prescribed by a physician — compare over-the-counter" drug. *Webster's Third New International Dictionary, Unabridged Edition* (1961), p 1792. Also see *The American Heritage Dictionary, Second College Edition*, p 979. In turn, an "over-the-counter" drug is defined as "capable of being sold legally without the prescription of a physician, dentist, or veterinarian." *Webster's*, p 1611. These definitions focus on the nature of the drug,

instead of on whether the drug has actually been dispensed pursuant to a prescription. Here, the parties stipulated that the drugs at issue may not be lawfully dispensed to consumers without a prescription. Therefore, they are prescription drugs within the common definition of a prescription drug. We further believe that the common definition is the best indicator of what is generally understood and the "meaning which [the term] would naturally convey to the popular mind." *Advisory Opinion on Constitutionality of 1978 PA 426*, 403 Mich 631, 639; 272 NW2d 495 (1978). [*Id.* at 389-390.]

This Court also noted that the Public Health Code definition of "prescription drug," which includes drugs that may only be dispensed by prescription, "focuses on the nature of the drug." *Id.* at 390, citing MCL 333.17708(4)(c); MSA 14.15(17708)(4)(c). Accordingly, respondent argues here that it is the "nature of the drug," rather than the particular transaction through which it is dispensed or acquired, that determines whether a drug falls within the definition of "prescription drug."[2]

The definition of "prescription drug" set forth in the Use Tax Act and construed in *Syntex* is virtually identical to the definition of that term in § 4g(2) of the General Sales Tax Act. Contrary to petitioner's contention, the discussion in *Syntex* of the meaning of the term "prescription drug" was not mere dicta, but was fundamental to the decision; as this Court stated, "[i]f the sample drugs petitioner uses in its solicitation process are 'prescription drugs,' then the use of

---

[2] Respondent would limit the sales tax exemption to what are typically referred to as "legend" drugs, i.e., drugs that are solely available by prescription because they are required to bear the legend: "CAUTION: federal law prohibits dispensing without prescription." Conversely, drugs that are otherwise available at retail without a prescription are "non-legend" drugs.

those drugs is exempt from . . . use tax." *Syntex*, *supra* at 388. The Court clearly held that the transactional circumstances under which a particular drug is obtained are not a determining factor in deciding whether the transaction fits within the scope of the tax exemption for prescription drugs. *Id.* at 389. Instead, it relied on the commonly understood definition of "prescription drugs," which it found to mean "a drug that can be bought only as prescribed by a physician." *Id.*[3]

The Michigan Supreme Court has held that the primary rule of construction to be used in interpreting constitutional provisions is "the rule of 'common understanding.'" *Advisory Opinion on 1978 PA 426*, *supra* at 638. "In ascertaining the meaning of words in a constitution, a court should give effect to the plain meaning of such words as understood by the people who adopted it." *Id.* Applying this rule, this Court concluded in *Syntex, supra* at 390, that "the common definition is the best indicator of what is generally understood and the 'meaning which [the term] would naturally convey to the popular mind.'" In the instant case, adopting petitioner's interpretation would potentially confer prescription drug (and sales tax-exempt) status on anything that could reasonably be characterized as a drug, rather than merely on "legend" drugs, because the only requirements would be that the substance be a drug and that it be prescribable. Such an interpretation does not comport with the commonly understood meaning of "prescription drug" as found in *Syntex*. It would also

---

[3] This holding is binding under Administrative Order No. 1996-4 because the case was decided after November 1, 1990.

open the door to potential abuse by providing a method of avoiding the payment of sales tax on otherwise taxable items.[4]

Although 1981 AACS, R 325.20903(1) mandates that no medications may be dispensed to nursing home patients except with the written or verbal order of a physician, the undisputed testimony showed that the purpose of this requirement is "to ensure that medical care is being provided in accordance with each recipient's individualized medical care plan." Thus, the requirement exists for recordkeeping and oversight purposes that are unrelated to the intent of the constitutional exemption from taxation. Consequently, in our judgment, the Tax Tribunal did not err in concluding that petitioner had not met its burden of proving its entitlement to the exemption beyond a reasonable doubt. *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948); *Holland Home v Grand Rapids*, 219 Mich App 384, 395; 557 NW2d 118 (1996).

Next, we find that the Tax Tribunal did not err in concluding that the governmental entity exemption of MCL 205.54(6); MSA 7.524(6) did not apply to sales of medical items to nursing home patients enrolled in the Medicare, Medicaid, or Veterans Administration programs. Section 4(6) provides:

> A person subject to tax under this act shall not include in the amount of his or her gross proceeds used for computation of the tax any proceeds of his or her business derived from sales to the United States, its unincorporated agencies and instrumentalities, any incorporated agency or instru-

---

[4] Under such an interpretation, indigent and elderly persons who are not in nursing homes would continue to pay sales tax on non-legend drugs unless they could obtain an otherwise unnecessary prescription.

mentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States, the American Red Cross and its chapters or branches, and this state or its departments and institutions or any of its political subdivisions.

Thus, sales to the United States government, its agencies and instrumentalities, or to departments, political subdivisions, and institutions of the State of Michigan are exempt from sales tax. Petitioner claims that the nursing homes to which it sells supplies are agencies or instrumentalities of the federal and state governments because they provide medical care under the relevant programs. However, the Tax Tribunal, relying on *Dep't of Employment v United States*, 385 US 355; 87 S Ct 464; 17 L Ed 2d 414 (1966), concluded:

Petitioner is not an instrumentality of the United States or Michigan. The government exerts no control over whom shall be president of Petitioner or members of the board. There has been no proof that the government, federal or state, provides any financial support to Petitioner. Although Petitioner's services are valuable to the community, there is no evidence to suggest the governments relied upon Petitioner nor could it be considered as an arm of government. The Tribunal finds the Michigan Department of Treasury's imposition of sales tax involving Medicare, Medicaid and VA patients does not constitute the imposition of a tax upon the United States or the State of Michigan.

It appears from the tribunal's opinion that the parties and the tribunal approached this issue from different directions. The tribunal apparently reasoned that, because sales tax is imposed by the state on the seller, the governmental entity exemption would only apply if *petitioner* were an instrumentality or agency of the state or federal government. However, § 4(6) does not require that the seller be an agent or instru-

ment of the government, only that the sale be made to such an entity. The parties, on the other hand, appear to correctly take the position that the governmental entity exemption applies if *the nursing homes to which petitioner sells drugs* are instrumentalities or agencies of the state or federal government.

Section 4(6) expressly exempts sales made *to* the state or federal government or to a United States agency or instrumentality. Therefore, even if a United States agency or instrumentality is not exempt from state sales tax under federal law, it remains so under § 4(6). Compare *United States v California*, 507 US 746; 113 S Ct 1784; 123 L Ed 2d 528 (1993) (holding that under federal law, a state's sales tax on governmental vendors did not violate governmental immunity from taxation because it was not imposed directly on the governmental entity, agency, or instrumentality). The exemption's operation with regard to state government extends only to state departments, institutions, or political subdivisions. Section 4(6). The nursing homes to which petitioner sells medical supplies do not fall within any of these categories because they are privately owned. Therefore, the sales at issue will only qualify for the exemption if the nursing homes can be properly characterized as federal agencies or instrumentalities.

As the tribunal noted, the characteristics of a governmental instrumentality were defined in *Dep't of Employment*. In that case, the Court held that some of the characteristics of the Red Cross that defined it as a federal instrumentality were that (1) it was chartered by Congress and is subject to congressional supervision and financial audits, (2) its principal officer is appointed by the president, (3) it had the

right and the obligation to meet this country's commitments under the Geneva Convention and "to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe," (4) it carries out the federal government's function of providing disaster assistance to the states, and (5) "both the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government." *Id.* at 359-360. In the instant case, the nursing homes are not chartered by Congress, do not have their officers appointed by Congress, are not subject to congressional oversight, and cannot be characterized "virtually as an arm of the government." Therefore, because the nursing homes to which petitioner sold the drugs at issue are not agencies or instrumentalities of the federal government, the transactions do not fit within the governmental entity exception.[5]

Affirmed.

---

[5] Petitioner further relies on *Garavaglia v Dep't of Revenue*, 338 Mich 467, 471; 61 NW2d 612 (1953), in which the Supreme Court held that a road construction company was exempt from sales tax on the supplies it purchased in connection with road work performed under contract with the state. However, that case was overruled by the Court's subsequent holding in *Davidson v Secretary of State*, 365 Mich 162; 112 NW2d 106 (1961). Similarly, the other cases relied on by petitioner, *United States v Michigan*, 851 F2d 803 (CA 6, 1988) (holding that federal credit unions were immune from sales tax as federal governmental instrumentalities), and *United States v Lohman*, 74 F3d 863 (CA 8, 1996) (holding that tax charged on the sales of electricity to an army ammunition plant violated a governmental entity tax exemption), are inapplicable because both cases involved sales to governmental instrumentalities.