BIRCHWOOD MANOR, INC v COMMISSIONER OF REVENUE
HEALTH CARE AND RETIREMENT CORPORATION v
COMMISSIONER OF REVENUE
KNOLLVIEW MANOR, INC v COMMISSIONER OF REVENUE

Docket Nos. 236646, 236698, 236699. Submitted February 9, 2004, at
Lansing. Decided March 16, 2004, at 9:00 A.M.

Birchwood Manor, Inc., Health Care and Retirement Corporation,
and Knollview Manor, Inc., separately petitioned the Tax Tribunal
to challenge assessments by the Commissioner of Revenue of use
tax on nonlegend, or over-the-counter, drugs dispensed by licensed
pharmacists pursuant to physicians' prescriptions or orders and
used by residents at the petitioners' nursing homes. The petition-
ers claimed exemption from the use tax under MCL 205.94d. The
Tax Tribunal granted summary disposition for the respondent and
upheld the assessments on the basis of *CompuPharm-LTC v Dep't
of Treasury*, 225 Mich App 274 (1997), which held that nonlegend
drugs dispensed to nursing home residents by licensed pharma-
cists pursuant to physicians' written prescriptions were not ex-
empt from the sales tax. The petitioners appealed, and their
appeals were consolidated. The Court of Appeals, BANDSTRA, P.J.,
and GAGE and SCHUETTE, JJ., affirmed, pursuant to MCR 7.215(J),
stating that were it not constrained by the court rule to follow
*CompuPharm*, it would hold that under MCL 205.94d, a drug,
whether legend or nonlegend, dispensed by a pharmacist pursuant
to a written prescription by a physician is a prescription drug for
purposes of the prescription drug exemption from the use tax. 258
Mich App 801 (2003). The Court of Appeals, after a poll of its
judges, convened a special panel to resolve the conflict between
these consolidated cases and *CompuPharm*, and vacated the
opinion in these consolidated cases. 258 Mich App 801 (2003).

After consideration by the special panel, the Court of Appeal
*held*:

Nonlegend drugs dispensed to nursing home residents by
licensed pharmacists pursuant to physicians' written prescriptions
are exempt from the use tax.

1. Const 1963, art 9, § 8 provides that no sales tax or use tax shall be charged or collected from and after January 1, 1975, on the sale or use of prescription drugs for human use.

2. The Use Tax Act, MCL 205.94d(2), defines "prescription drug" as a drug dispensed by a licensed pharmacist pursuant to a written prescription prescribed by a licensed physician for the use of a designated person. Here, where the drugs at issue were ordered or prescribed by licensed physicians and were dispensed by licensed pharmacists for use by particular residents, the drugs qualify for the use tax exemption under the plain language of the statute.

3. Regardless of whether the physicians in these cases transmitted written prescriptions or written orders to the pharmacists, the transmitted items qualify as written prescriptions within the meaning of the Use Tax Act.

Reversed.

TAXATION — USE TAX — PRESCRIPTION DRUG EXEMPTION.

A drug, whether legend or nonlegend, dispensed by a pharmacist pursuant to a written prescription prescribed by a licensed physician is a prescription drug that is exempt from the use tax (MCL 205.94d).

*Cooper & Walinski* (by *W. Miles McKee, Janet E. Hales*, and *Libbey W. Call Best*) for the petitioners.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the respondent.

Before: WHITBECK, C.J., and MURPHY, CAVANAGH, SAAD, SMOLENSKI, OWENS and FORT HOOD, JJ.

SAAD, J. Pursuant to MCR 7.215(J), this Court convened a special panel to resolve the conflict between this Court's vacated opinion in *Birchwood Manor, Inc v Comm'r of Revenue*, 258 Mich App 801 (2003), and this Court's prior opinion in *CompuPharm-LTC v Dep't of Treasury*, 225 Mich App 274; 570 NW2d 476 (1997). We conclude that *CompuPharm* was wrongly decided and,

therefore, we reverse the Tax Tribunal's grant of summary disposition to the Commissioner of Revenue.

### I. NATURE OF THE CASE AND HOLDING

Three nursing homes, Birchwood Manor, Inc., Health Care and Retirement Corporation, and Knollview Manor, Inc. (collectively, "petitioners"), challenged the Commissioner of Revenue's use tax assessment on petitioners' purchase of over-the-counter or "nonlegend"[1] drugs for use by nursing home residents. Specifically, petitioners argued that the drugs are exempt from use tax under MCL 205.94d because, as explained in *Birchwood, supra,* the drugs "were dispensed by a licensed pharmacist pursuant to a prescription written by a physician for a designated resident." *Birchwood, supra* at 802. After the Commissioner of Revenue rejected petitioners' argument, the Tax Tribunal upheld the use tax assessment on the basis of this Court's decision in *CompuPharm* and granted summary disposition to the Commissioner of Revenue.

On appeal, this Court affirmed the Tax Tribunal's decision because it was bound by *CompuPharm.* MCR 7.215(J)(1). However, the *Birchwood* Court called for this special panel and explained that, "were we not bound by *CompuPharm,* we would hold that under MCL 205.94d, a drug, whether legend or nonlegend,

---

[1] As the panel explained in *Birchwood, supra* at 802 n 1:

Federal law requires certain drugs to bear a legend indicating they may be dispensed only by prescription. 21 CFR 201.100(b). These drugs are referred to as "legend drugs." When the parties filed their briefs in this case, the labels of these drugs were required to state, "Caution: Federal law prohibits dispensing without prescription." Effective April 2, 2002, the labels must now state, "Rx only." 67 FR 4904, 4906. "Nonlegend" drugs are those drugs that do not require this label.

dispensed by a pharmacist pursuant to a written prescription prescribed by a licensed physician is a prescription drug for purposes of exemption from use tax." *Birchwood, supra* at 811. We agree with much of the analysis in *Birchwood* and the panel's conclusion that *CompuPharm* was wrongly decided. Accordingly, for the reasons set forth in this opinion, we hold that the drugs purchased by petitioners are exempt from use tax under MCL 205.94d.

Before we examine the numerous bases for our decision, we offer the following summary of our holding: The *CompuPharm* panel misinterpreted *Syntex Laboratories, Inc v Dep't of Treasury*, 188 Mich App 383; 470 NW2d 665 (1991), in which this Court defined "prescription drug" as stated in the Michigan Constitution. The *Syntex* panel correctly applied principles of constitutional construction to give "prescription drug" the meaning commonly understood by the general population. Here, however, and as the Court should have done in *CompuPharm*, this Court must use principles of *statutory* construction to define "prescription drug" under the Use Tax Act and apply the plain language of the statute.[2] A plain language analysis compels the conclusion that the drugs at issue here are "prescription drugs" within the meaning of the Use Tax Act because they are drugs, and they were dispensed by licensed pharmacists, pursuant to prescriptions issued by licensed physicians, for designated persons. MCL 205.94d(2).

---

[2] *CompuPharm* involved a claim under the General Sales Tax Act. However, as the *Birchwood* panel correctly noted, "[a]lthough the present case involves use tax rather than sales tax, this Court has noted the use tax act and the sales tax act define prescription drugs nearly identically." *Birchwood, supra* at 804, citing *CompuPharm, supra* at 278.

Though the statutory provision appears to broaden the tax exemption contained in the Constitution, the Michigan Legislature has the right to further define and expand the definition of "prescription drug" in order to implement the constitutional mandate. Furthermore, if the Legislature wished to exempt only those drugs that can be purchased only with a doctor's prescription, it could have easily said so in the statute. Our holding has additional support in the Public Health Code, which explicitly defines prescription drugs to include the drugs at issue here. Finally, and because the parties agree that pharmacists dispensed the drugs pursuant to written prescriptions or orders from licensed physicians, each of the drugs was issued pursuant to a "written prescription" and, contrary to the panel's inclination in the prior *Birchwood* opinion, it is unnecessary to remand this case for further findings of fact on this issue. Accordingly, we reverse the grant of summary disposition for the Commissioner of Revenue.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

As this Court correctly stated in *Birchwood, supra* at 802:

> This Court's review of Tax Tribunal decisions is very limited. *Michigan Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). On appeal, absent a claim of fraud, this Court can determine only whether the tribunal committed an error of law or adopted a wrong legal principle. *Id.*; *Michigan Bell Telephone Co v Dep't of Treasury*, 229 Mich App 200, 206; 581 NW2d 770 (1998). Further, the tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record. *Michigan Milk Producers, supra* at 490-491; *Can-*

*terbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 28; 558 NW2d 444 (1996).

"Statutory interpretation is a question of law that is reviewed de novo." *Inter Co-op Council v Dep't of Treasury*, 257 Mich App 219, 222; 668 NW2d 181 (2003). "Although tax laws are construed against the government, tax-exemption statutes are strictly construed in favor of the taxing unit." *Id.*

### B. *SYNTEX* AND *COMPUPHARM*

"The precise question petitioners request be decided is whether nonlegend drugs dispensed to nursing home residents by licensed pharmacists pursuant to physicians' written prescriptions are exempt from use tax." *Birchwood, supra* at 803. In *CompuPharm*, this Court ruled that such drugs are not exempt from sales tax because they are not "prescription drugs" under Michigan law. We hold that, in so ruling, the *CompuPharm* panel misinterpreted and misapplied Michigan law.

Article 9, § 8 of the Michigan Constitution provides that "[n]o sales tax or use tax shall be charged or collected from and after January 1, 1975 on the sale or use of prescription drugs for human use . . . ." As noted in *Birchwood*, "the Constitution does not define 'prescription drugs for human use.' " *Birchwood, supra* at 803. The Use Tax Act, MCL 205.94d(2), also exempts "prescription drugs for human use" and offers the following definition:

> "Prescription drug for human use" means insulin or a drug dispensed by a licensed pharmacist pursuant to a written prescription prescribed by a licensed physician or other health professional as defined in section 21005 of the public health code, 1978 PA 368, MCL 333.21005, for the use of a designated person, or oxygen dispensed pursuant to a written prescription or order issued by a licensed

physician or other health professional as defined in section 21005 of the public health code, 1978 PA 368, MCL 333.21005.

In *Syntex*, this Court considered whether the Constitution's use tax exemption applies to legend drug samples distributed by drug manufacturers for marketing purposes. The Court explicitly ruled that the drug samples did not satisfy the statutory definition of a "prescription drug" under MCL 205.94d(2), "because they were not dispensed by a pharmacist to fill a prescription prescribed by a physician." *Id.* at 389.

However, the *Syntex* Court ruled that the imposition of use tax on the drug *samples* violates the Constitution, Article 9, § 8. In determining whether the drug *samples* constitute a "prescription drug" within the constitutional exemption, the *Syntex* Court correctly applied the rules of constitutional interpretation by employing the "common understanding of the words used." *Id.* at 385. As our Supreme Court recently explained in *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 155; 665 NW2d 452 (2003):

> When interpreting the constitution, our task is to give effect to the common understanding of the text:
>
> "A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.' (Cooley's Const Lim 81)." [Quoting *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971) (emphasis omitted).]

Thus, the *Syntex* Court relied on the dictionary definition of prescription drug:

> A "prescription drug" is defined as "a drug that can be bought only as prescribed by a physician—compare over-the-counter" drug. *Webster's Third New International Dictionary, Unabridged Edition* (1961), p 1792. Also see *The American Heritage Dictionary, Second College Edition*, p 979. In turn, an "over-the-counter" drug is defined as "capable of being sold legally without the prescription of a physician, dentist, or veterinarian." *Webster's*, p 1611. These definitions focus on the nature of the drug, instead of on whether the drug has actually been dispensed pursuant to a prescription. Here, the parties stipulated that the drugs at issue may not be lawfully dispensed to consumers without a prescription. Therefore, they are prescription drugs within the common definition of a prescription drug. We further believe that the common definition is the best indicator of what is generally understood and the "meaning which [the term] would naturally convey to the popular mind." *Advisory Opinion on Constitutionality of 1978 PA 426*, 403 Mich 631, 639; 272 NW2d 495 (1978). [*Syntex, supra* at 389-390.]

The *Syntex* Court also observed that "the Public Health Code defines '[p]rescription drug' to include '[a] drug designated by the board as one which may only be dispensed pursuant to a prescription.' " *Id.* at 390, quoting MCL 333.17708(4)(c). Thus, the *Syntex* Court ruled that, *under the Constitution*, whether a drug is a "prescription drug" depends on the nature of the drug itself, not on how the drug is distributed.

The panel in *CompuPharm* misapprehended the *Syntex* analysis. In *CompuPharm*, the panel ruled that over-the-counter drugs purchased for nursing home residents do not qualify for the statutory sales tax exemption.[3] *CompuPharm, supra* at 277-280. The drug

---

[3] The General Sales Tax Act, MCL 205.54g, provides:

manufacturer argued that a nonlegend drug dispensed pursuant to a doctor's prescription qualifies for exemption because, under the plain language of the sales tax exemption statute, MCL 205.54g(2), it is "(1) a drug, (2) dispensed by a licensed pharmacist, (3) prescribed by a licensed health-care professional, and (4) for the use of a particular designated person." *Id.* at 276-277. Using the *Syntex* "common understanding" analysis, the *CompuPharm* panel rejected this "transactional approach" for defining "prescription drug" because *Syntex* held that a prescription drug is one that, by nature, may only be purchased by prescription. *CompuPharm, supra* at 277. The *Birchwood* panel explained the error in *CompuPharm*'s analysis:

> The petitioner in *CompuPharm* based its argument on the statutory exemption as well as the constitutional exemption. [*CompuPharm, supra* at 275.] Apparently, the *CompuPharm* panel assumed the *Syntex* analysis applied to both: "The definition of 'prescription drug' set forth in the Use Tax Act *and construed* in *Syntex* . . . ." *Id.* at 278

---

(1) A person subject to tax under this act may exclude from the amount of the gross proceeds used for the computation of the tax 1 or more of the following:

(a) Sales of prescription drugs for human use or food for human consumption, except prepared food intended for immediate consumption.

\* \* \*

(2) "Prescription drugs for human use" means insulin or a drug dispensed by a licensed pharmacist pursuant to a written prescription prescribed by a licensed physician or other health professional as defined by section 21005 of the public health code, 1978 PA 368, MCL 333.21005, for the use of a designated person, or oxygen dispensed pursuant to a written prescription or order issued by a licensed physician or other health professional as defined in section 21005 of the public health code, 1978 PA 368, MCL 333.21005.

(emphasis added). However, a closer reading of *Syntex* shows that the ruling applies to only the constitutional provision. *Syntex, supra* at 389-391. The *Syntex* panel addressed MCL 205.94d only to note that the drugs did not meet the statutory definition of "prescription drug." [*Birchwood, supra* at 806.]

We agree with *Birchwood* that the *CompuPharm* panel erred by applying the *Syntex* "common understanding" analysis to interpret the tax exemption statute. As the *Birchwood* panel explained, the "common understanding" approach does not apply to statutory interpretation:

The differing goals of statutory interpretation and constitutional interpretation indicate that *Syntex's* analysis cannot simply be transferred to the statutory definition. The goal of either type of interpretation is to ascertain and give effect to the purpose and intent of the provision. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998); *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979). However, when interpreting a statute, one aims to determine the intent of the legislature that passed the provision, and the plain and ordinary meaning of the language governs. *Frankenmuth, supra* at 515; *Toth v AutoAlliance Int'l, Inc*, 246 Mich App 732, 737; 635 NW2d 62 (2001). By contrast, constitutional interpretation aims to determine the intent of the people who adopted the provision, and the rule of common understanding applies. *Straus v Governor*, 459 Mich 526, 533; 592 NW2d 53 (1999). [*Birchwood, supra* at 806-807.]

Accordingly, to determine whether the nonlegend drugs in this case are exempt under the Use Tax Act, we must apply principles of statutory, not constitutional, interpretation.

### C. USE TAX EXEMPTION

As our Supreme Court explained in *In re Certified Question (Kenneth Henes v Continental Biomass)*, 468 Mich 109, 113; 659 NW2d 597 (2003):

A fundamental principle of statutory construction is that "a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993). The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. *Sun Valley Foods Co v Ward*, 460 Mich 230; 596 NW2d 119 (1999). When a legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

As the *Birchwood* panel recognized, the statute cannot be fairly read to define a prescription drug as one that may only be purchased by prescription:

Importantly, [the statute] does not lend itself to the meaning of "prescription drug" derived in Syntex. The language states that prescription drugs are those dispensed by a pharmacist to fill a prescription. It cannot be fairly interpreted as including only those drugs that must be distributed by a pharmacist. If the Legislature had intended the latter meaning, it could have included language to that effect—for instance, "insulin or a drug *required to be* dispensed by a licensed pharmacist." [*Birchwood, supra* at 808 (emphasis in original).]

"There is no basis for applying a limitation where there is no limiting language in the definition, and no such qualification is otherwise implied." *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 172; 610 NW2d 613 (2000). Further, it is well-settled that "[c]ourts may not speculate regarding the probable intent of the Legislature beyond the language expressed in the statute." *Id.* at 173.

The definition of prescription drug in MCL 205.94d(2) is clear and unambiguous, and thus not subject to judicial interpretation. *Cherry Growers, su-*

*pra.* The Use Tax Act, MCL 205.94d(2), defines "prescription drug" as "a drug dispensed by a licensed pharmacist pursuant to a written prescription prescribed by a licensed physician . . . for the use of a designated person . . . ." The language of the statute is unequivocal and, therefore, our role is limited to applying its terms to the circumstances of this case. *In re Certified Question, supra* at 113. Here, the drugs at issue were ordered or prescribed by licensed physicians and were dispensed by licensed pharmacists for use by particular residents. Regardless of whether this application is characterized as a "transactional approach,"[4] it is clear that the drugs qualify for the use tax exemption under the plain language of the statute.[5]

---

[4] Again, the *CompuPharm* Court erroneously concluded that *Syntex* rejected a transactional approach for purposes of interpreting the use tax exemption in both the statutory provision and the constitutional provision when, in fact, *Syntex* did so only for the purpose of interpreting the constitutional provision.

[5] We also agree with the *Birchwood* panel that the policy concerns outlined by the *CompuPharm* panel are considerations for the Legislature, not this Court. See *CompuPharm, supra* at 279-280. Our interpretation of "prescription drugs" is mandated by the plain language of the statute and we cannot impose a different meaning merely because the statute broadens the interpretation of "prescription drugs" or because the method of distribution is mandated by regulations intended to serve record keeping and oversight purposes. As the *Birchwood* panel opined:

> We do not dispute that these are valid concerns. However, they represent policy considerations for the Legislature, not this Court, to weigh. In interpreting a statute, this Court may not impose a construction based on a different policy decision than the Legislature has chosen. *Robertson v DaimlerChrysler Corp,* 465 Mich 732, 752; 641 NW2d 567 (2002); see also *City of Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959) (" 'The duty of the Court is to interpret the statute as we find it. The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere.' ") (citation omitted). [*Birchwood, supra* at 809.]

The Public Health Code, MCL 333.17708, further supports our conclusion that "prescription drugs" encompasses the drugs at issue here. As noted, the *Syntex* panel looked to a definition in Part 177, Pharmacy Practice and Drug Control, in support of its finding regarding the constitutional exemption. *Syntex, supra* at 390, citing MCL 333.17708(4)(c). MCL 205.94d directs the reader to parts of the Public Health Code for assistance in interpreting its terms. While one definition in the Public Health Code appears to focus on whether the drug "may only be dispensed pursuant to a prescription," 4(c), the statute alternatively defines "prescription drug" as "[a] drug dispensed pursuant to a prescription," 4(a). This definition makes no distinction on the basis of the nature of the drug, but explicitly includes those drugs distributed by prescription.

### D. DISPENSED BY PRESCRIPTION

Petitioners argue that the Tax Tribunal committed a factual error by finding that the nonlegend drugs were administered pursuant to physicians' orders rather than prescriptions. The drugs, therefore, would not satisfy MCL 205.94d because they were not dispensed pursuant to a prescription written by a licensed physician. The *Birchwood* Court noted that the record did not reveal whether petitioners ordered drugs for designated residents from prescriptions written by licensed physicians, or from orders signed by licensed physicians. However, the Court explained:

> The record here reflects that the physicians' orders were either mailed or faxed to pharmacies to be filled by pharmacists[.] The drugs were then sent back to the nursing homes in boxes labeled for each resident. Therefore, it appears that specific written "orders" for particular drugs

to be dispensed to particular residents were sent to pharmacies and filled by pharmacists. [*Birchwood, supra* at 810.]

Federal and state regulations require that drugs be administered to nursing home residents only pursuant to physicians' orders. See 42 CFR 483.40(b)(3); 2001 AC, R 325.20903(1). This is true regardless of whether the drug can be obtained by the public on an over-the-counter basis. As the *Birchwood* panel explained:

> The term "prescription" does not appear in any of the regulations petitioners cite for this proposition. 42 CFR 483.40; 42 CFR 483.60; 2001 AC, R 325.20903. Instead, the regulations require that doctors sign and date all orders for nursing home residents, with limited exceptions. 42 CFR 483.40(b)(3). In addition, nursing homes must provide pharmaceutical services and employ or obtain the services of a licensed pharmacist. 42 CFR 483.60. Finally, state regulations mandate that nursing homes administer medications only in accordance with the attending physician's order. 2001 AC, R 325.20903(1). [*Birchwood, supra* at 810.]

The *Birchwood* Court observed that it found no difference between a prescription signed by a physician and an order signed by a physician, but concluded that were it not bound by *CompuPharm*, it would remand to the Tax Tribunal with instructions that the tribunal make that determination. We disagree with the Birchwood panel's conclusion of the need for remand.

At oral argument, the parties agreed that the drugs were obtained by written orders from licensed physicians for use by particular nursing home residents. We agree with the Birchwood panel's assertion that "the difference in terms of 'order' and 'prescription' in this case appears to be a distinction without a difference." *Birchwood, supra* at 810. While the *Birchwood* panel turned to a dictionary definition of the term "prescription," *Birchwood, supra* at 810 n 5, this medical term of

art is more accurately defined by the Pharmacy Practice section of the Public Health Code, MCL 333.17708(3), which provides:

> "Prescription" means an order for a drug or device written and signed or transmitted by other means of communication by a prescriber to be filled, compounded, or dispensed. Prescribing is limited to a prescriber. *An order transmitted in other than written form shall be recorded or written and immediately dated by the pharmacist, and that record constitutes the original prescription.* In a health facility or agency licensed under article 17 or other medical institution, an order for a drug or device in the patient's chart constitutes for the purposes of this definition the original prescription. Subject to section 17751(2), prescription includes, but is not limited to, an order for a drug, not including a controlled substance as defined in section 7104 except under circumstances described in section 17763(g), written and signed or transmitted by other means of communication by a physician prescriber licensed to practice in a state other than Michigan. [Emphasis added.]

Whether the physicians here transmitted written prescriptions or written "orders," they qualify as "written prescriptions." As defined for physicians and pharmacists in the Public Health Code, a prescription may be written or otherwise communicated by the prescriber to a pharmacist and, once the pharmacist records the order in writing, as required by the statute, it becomes the original prescription. The statute also anticipates that, in hospitals and other medical care facilities, a formal written prescription is neither practical nor required. Rather, a chart notation constitutes an original prescription and so does an order for a drug "written and signed or transmitted by other means of communication by a physician prescriber licensed to practice in a state other than Michigan." We see no reason to ignore or invalidate these statutory definitions of what constitutes a written prescription as

mandated for physicians and other health-care professionals in this state. The statute, and the common practice among physicians and pharmacists, dictates that the drug orders in this case are written prescriptions within the meaning of the Use Tax Act.

Accordingly, it is not necessary to remand this case for further findings by the Tax Tribunal.

For the reasons stated, the drugs at issue are exempt from use tax and the Tax Tribunal's grant of summary disposition for the Commissioner of Revenue is reversed.