MICHIGAN MILK PRODUCERS ASSOCIATION
v DEPARTMENT OF TREASURY

Docket No. 215385. Submitted December 7, 1999, at Lansing. Decided September 12, 2000, at 9:00 A.M. Leave to appeal sought.

The Michigan Milk Producers Association petitioned the Michigan Tax Tribunal for a refund of use tax paid by the petitioner to the Michigan Department of Treasury for machinery, equipment, and supplies used in the petitioner's Novi, Michigan, laboratory for testing raw milk. The petitioner markets milk produced by its members' dairy farms and tests raw milk for compliance with federal and state requirements relating to the commercial sale of milk, as well as for determining the milk's market price. The Tax Tribunal ordered a refund, deciding that the agricultural production exemption of subsection 4(f) of the Use Tax Act, MCL 205.94(f); MSA 7.555(4)(f), applied to the personal property at issue. The department appealed.

The Court of Appeals *held*:

The Tax Tribunal correctly determined that the petitioner's milk-testing machinery, equipment, and supplies were exempt from the use tax. Subsection 4(f) has two basic requirements for qualifying for exemption. First, the subject property must be sold to a person engaged in a business enterprise. Second, the property must be used or consumed in connection with agricultural or horticultural production. Both requirements were met in this case. Milk production is a form of agricultural production, and the petitioner's testing for compliance with federal and state requirements was part of the milk production process. The fact that testing was also conducted for a marketing purpose, i.e., determining price, did not disqualify the petitioner from the exemption because taxable use concurrent with nontaxable use does not remove the protection of the exemption. Finally, a taxpayer need only be engaged in a business enterprise, and need not be an agricultural producer, in order to qualify for exemption under subsection 4(f).

Affirmed.

TAXATION — USE TAX — AGRICULTURAL EXEMPTION.

Personal property of a person engaged in a business enterprise and used or consumed in connection with agricultural or horticultural

production is exempt from the use tax (MCL 205.94[f]; MSA 7.555[4][f]).

*Foster, Swift, Collins & Smith, P.C.* (by *David VanderHaagen*), for the petitioner.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the respondent.

Before: DOCTOROFF, P.J., and O'CONNELL and WILDER, JJ.

WILDER, J. In this tax dispute, respondent Department of Treasury appeals as of right from the opinion and judgment of the Michigan Tax Tribunal in favor of petitioner Michigan Milk Producers Association canceling an assessment and ordering a refund of use taxes paid by petitioner pursuant to the Use Tax Act (UTA), MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.* We affirm.

I. FACTS AND PROCEDURAL BACKGROUND

This case was submitted to the Tax Tribunal on stipulated facts. Petitioner is a Michigan cooperative corporation with approximately 2,850 dairy farmer members involved in milk production. Pursuant to Membership and Marketing Agreements between petitioner and the dairy farmers, petitioner markets the milk for sale and remits proceeds from the sales to the dairy farmer members. Following an audit for the period July 1, 1990, through December 31, 1993, respondent assessed use taxes against petitioner for machinery, equipment, and supplies that petitioner used in its Novi, Michigan, laboratory for testing its members' raw milk for such things as butterfat, bacte-

rial counts, somatic cell counts, drug residues, and protein. These tests were required by state and federal health laws for the commercial marketing of milk. Petitioner's Novi testing laboratory was approved by the Food and Drug Administration (FDA) and the Michigan Department of Agriculture. The parties agreed that, pursuant to statute, "[a] dairy farmer engaged in a business enterprise and using and consuming property in the breeding, raising, or caring for livestock will be exempt from use tax on the purchase of the property."

Petitioner tendered an interim tax payment and subsequently sought a refund of these taxes on the basis that the subject equipment was exempt from the use tax pursuant to MCL 205.94(f); MSA 7.555(4)(f) and 1979 AC, R 205.51 and 1979 AC, R 205.72(1). Following an administrative hearing, the referee found that raw milk testing was part of agricultural production because the tests relate information about the milk that exists before the milk is transported for bottling, the tests performed in this case were necessitated by health concerns, and the tests were conducted on farms or other locations. The referee also found that while certain tests used to determine market prices addressed economic concerns and were not part of agricultural production, because the tests conducted by petitioner at the Novi lab had "concurrent purposes" inasmuch as they were needed for health requirements and to establish market prices, the equipment used for raw milk testing fell within the protection of the agricultural production exemption. Accordingly, the referee recommended that the assessment be canceled and the payment refunded to petitioner.

Respondent's Acting Revenue Commissioner declined to accept the referee's recommendation and refused to refund the payment, reasoning as follows:

> The Department of Treasury is not convinced that the testing of milk for purposes of complying with governmental regulations meets the definitions of agricultural production, whether conducted by a farmer or an outside business enterprise. The production is completed when the milk enters the storage tank. Testing of milk to insure that it meets health requirements so as to not be detrimental to ultimate consumers does not meet the statutory definition. It has not been shown that the tests conducted by Michigan Milk Producers Association are of benefit to the producer other than in determining the amount the producer will be paid.

Petitioner appealed the assessment to the Tax Tribunal, which ruled in favor of petitioner and ordered respondent to refund the $13,213.31 in dispute. The tribunal, quoting this Court's holding in *William Mueller & Sons, Inc v Dep't of Treasury*, 189 Mich App 570, 574; 473 NW2d 783 (1991), found that "the exemption contained in § 4(f) does not require that the taxpayer be engaged in the actual production of horticultural or agricultural products." The tribunal noted that petitioner may be entitled to the exemption even if it is not an agricultural producer as long as petitioner's testing of raw milk was part of the agricultural production process. The tribunal concluded that petitioner's testing of the milk was a direct part of the agricultural production process and, thus, the equipment petitioner used in connection with the testing was exempt from use tax.

Respondent now appeals the tribunal's ruling, arguing that the use tax exemption is inapplicable be-

cause petitioner did not use or consume the subject property for agricultural production. Respondent maintains that petitioner's testing of the raw milk and its use of the test results to set the market price of milk constituted postproduction commercial marketing activity, not agricultural production. Respondent further contends that the holding in *Mueller* and the administrative interpretations of the UTA support imposition of the use tax on petitioner. Petitioner, on the other hand, contends that its equipment was exempt from use tax because dairy farming is a component of agricultural production within the meaning of the exemption statute and administrative rules, and the tests performed by petitioner were necessary to its members' commercial production of milk. Petitioner further notes that, pursuant to *Mueller*, a taxpayer may claim an agricultural production exemption even though the taxpayer is not directly engaged in production.

## II. STANDARD OF REVIEW

This Court's authority to review a decision of the Tax Tribunal is very limited. *Miedema Metal Building Systems, Inc v Dep't of Treasury*, 127 Mich App 533, 536; 338 NW2d 924 (1983), quoting *Michigan Nat'l Bank, Lansing v City of Lansing*, 96 Mich App 551, 553; 293 NW2d 626 (1980). In the absence of an allegation of fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong legal principle. *Michigan Bell Telephone Co v Dep't of Treasury*, 229 Mich App 200, 206; 581 NW2d 770 (1998); *Mueller, supra* at 572. The tribunal's factual findings will not be disturbed as long as they are sup-

ported by competent, material, and substantial evidence on the whole record. *Canterbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 28; 558 NW2d 444 (1996); *Speaker-Hines & Thomas, Inc v Dep't of Treasury*, 207 Mich App 84, 87; 523 NW2d 826 (1994).

Additionally, statutory interpretation is a question of law subject to review de novo. *In re MCI Telecommunications Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999). The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature as discerned from the language in the statute. *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998); *Michigan Bell, supra* at 207. Statutory language must be read according to its ordinary and generally accepted meaning. *Chandler, supra.* If the language of the statute is clear and unambiguous, judicial construction is neither permitted nor appropriate. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 517-518; 573 NW2d 611 (1998). This Court will generally defer to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing. *Canterbury, supra* at 33; *Maxitrol Co v Dep't of Treasury*, 217 Mich App 366, 370; 551 NW2d 471 (1996).

### III. ANALYSIS

The sole legal issue raised on appeal is whether the Tax Tribunal erred in concluding that petitioner's dairy testing equipment was exempt from use tax under the agricultural production exemption in the UTA. For the reasons stated below, we conclude that the tribunal correctly determined that petitioner was

entitled to the use tax exemption in subsection 4(f) of the UTA, and we affirm the tribunal's ruling.

The use tax, complementary to the general sales tax, is a tax levied on every person in this state "for the privilege of using, storing, or consuming tangible personal property in this state . . . ." MCL 205.93(1); MSA 7.555(3)(1); *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 408; 590 NW2d 293 (1999). Under the UTA, the term "use" is defined as follows:

> "Use" means the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given. [MCL 205.92(b); MSA 7.555(2)(b).]

MCL 205.94(f); MSA 7.555(4)(f) exempts from use tax

> [p]roperty sold to a person engaged in a business enterprise and using and consuming the property in the tilling, planting, caring for, or harvesting of the things of the soil or in the breeding, raising, or caring for livestock, poultry, or horticultural products, including transfers of livestock, poultry, or horticultural products for further growth. At the time of the transfer of that tangible personal property, the transferee shall sign a statement, in a form approved by the department, stating that the property is to be used or consumed in connection with the production of horticultural or agricultural products as a business enterprise. The statement shall be accepted by the courts as prima facie evidence of the exemption. . . . This exemption does not include transfers of food, fuel, clothing, or similar tangible personal property for personal living or human consumption. This exemption does not include tangible personal property permanently affixed and becoming a structural part of real estate.

In general, tax exemptions are strictly construed in favor of the taxing authority. *Canterbury, supra* at 31.

This Court should not, however, produce a strained construction that is adverse to legislative intent. *Id.* Moreover, ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer. *Czars, Inc v Dep't of Treasury*, 233 Mich App 632, 637; 593 NW2d 209 (1999).

Subsection 4(f) has two basic requirements in order to qualify for the exemption. First, the subject property must be sold to a person "engaged in a business enterprise." Second, the property must be used or consumed for agricultural or horticultural production. In this case, there is no question that petitioner is engaged in a business enterprise.[1] Thus, to resolve the issue before us we must determine whether petitioner used or consumed the subject property for agricultural production, that is, whether petitioner's testing of the raw milk before marketing it to consumers constitutes a component of agricultural production as contemplated by the exemption statute.

At the outset, we note that applicable administrative rules equate milk production with agricultural production. Administrative Rule 205.72 states:

> (1) The producing of milk is covered by R 205.51. The sale of all tangible personal property consumed or used directly in such producing prior to shipment from the place of production is not taxable.

---

[1] We reject as unsupported by the record respondent's recent claim that petitioner is not engaged in a business enterprise, particularly in view of respondent's concession to the contrary before the tribunal. *In re Forfeiture of $28,088 of United States Currency*, 172 Mich App 200, 206; 431 NW2d 437 (1988). In any event, subsection 4(f) refers to business enterprises in order to distinguish production for commerce from production for personal use. *Mueller, supra* at 574. There is no indication in this case that petitioner's activities were for personal rather than commercial use.

(2) . . . Processing includes all necessary operations performed on the milk prior to shipment from the plant. Sales of . . . equipment used directly in the processing of milk . . . are not taxable. [1979 AC, R 205.72.]

Rule 205.51(1) defines "agricultural producing" as "the commercial production, for sale, of crops, livestock, poultry, and other products by persons regularly engaged in business as farmers, nurserymen, or agriculturists." 1979 AC, R 205.51.    Further, Rule 205.51(5)(f) exempts from tax sales of "[m]achinery, tools, other equipment . . . and other tangible personal property" used in agricultural production.

These administrative rules, considered together with the parties' stipulation that a dairy farmer engaged in a business enterprise and using and consuming property in the breeding, raising, or caring for livestock will be exempt from use tax make it clear that commercial dairy farming (i.e., milk production) is within the scope of the UTA's agricultural production exemption.

We turn next to the question whether testing of the milk is a direct component of agricultural production or whether, as respondent asserts, the testing is only used for marketing the milk, a purpose to which the use tax exemption would not apply. The parties agree that petitioner is approved by the FDA and the Department of Agriculture to perform legally mandated testing of milk, without which the milk would not be eligible for marketing. The testing establishes the identity and confirms the safety of the raw milk produced on the farm. As the tribunal explained, "quality control," defined by *Webster's New World Dictionary of American English, Third Edition* (1988)  as "a system for maintaining desired standards in a product or

process, esp. by inspecting samples of the product," is a direct part of the production process. To this end, we agree with the tribunal's finding that because petitioner tests the raw milk to ensure that the legally mandated standards are satisfied, its quality control testing is a direct component of the agricultural production process.

Further, as the referee aptly noted, "[t]ests which tie in the quality of milk content to specific cows and specific herds are part of agricultural production because the tests relate information to circumstances which should exist before milk is transported for bottling." While the referee correctly pointed out that tests that determine market prices address economic concerns and have no relation to agricultural production, concurrent taxable use with an exempt use does not remove the protection of exemption. See *Michigan Allied Dairy Ass'n v State Bd of Tax Administration*, 302 Mich 643; 5 NW2d 516 (1942). Therefore, the tribunal did not clearly err in finding that raw milk testing is a part of agricultural production and that petitioner's milk testing equipment is exempt from the use tax under subsection 4(f). See *Miedema Metal, supra* at 533.

Finally, we reject respondent's argument that petitioner is not entitled to the agricultural production exemption because it is not an agricultural producer. In *Mueller, supra* at 573-574, this Court found that subsection 4(f) does not require that the taxpayer itself be directly engaged in the business of agricultural production in order to claim the exemption in subsection 4(f):

> Had the Legislature intended this subsection [4(f)] to apply only to farmers, it would have expressly said so. This

is evidenced by the fact that the Legislature specifically set forth this limitation under another exemption to the use tax. Under § 4(g), a taxpayer is not exempt if he only performs an industrial processing service and is not an industrial processor. By failing to include similar language in § 4(f), the Legislature evidenced its intent to provide broader coverage under § 4(f).

For these reasons, we conclude that the tribunal's finding that raw milk testing is part of the agricultural production process and that the subject property used for testing the raw milk is exempt from the use tax under the agricultural production exemption in the UTA is supported by competent, material, and substantial evidence on the whole record. *Canterbury, supra; Speaker-Hines, supra.*

Affirmed.