*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALMART REAL ESTATE BUSINESS TRUST,

Petitioner-Appellee,

v

CITY OF BAD AXE,

Respondent-Appellant.

UNPUBLISHED
October 20, 2022

No. 358930
Tax Tribunal
LC No. 19-001078

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

Respondent, City of Bad Axe, appeals as of right the judgment of the Michigan Tax Tribunal (MTT) determining the true cash value (TCV), state equalized value (SEV), and taxable value (TV) for the tax year 2019 for purposes of the ad valorem property tax assessment levied against a parcel of real property owned by petitioner, Walmart Real Estate Business Trust. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The subject property is a parcel of land improved with an approximately 184,000 square-foot "big box" store. Petitioner owns the land and improvements, and petitioner is the owner-occupant of the big box store. Petitioner challenged respondent's determination that the TV of the subject property for the tax year 2019 was $4,329,500.

Following an evidentiary hearing at which each party presented expert witness testimony regarding valuation of the subject property, the MTT issued a written opinion and judgment concluding that for 2019, the TCV of the subject property was $4,270,000, the SEV of the property was $2,135,000, and the TV of the property was $2,135,000. The MTT found that the market analysis and methodology of petitioner's valuation expert would be "given weight and credibility" in the MTT's independent determination of the subject property's market value. The MTT found the analysis of respondent's valuation expert to not be credible. The MTT further found that the independent determination of the subject property's market value was based on the property's status as "an owner-occupied commercial property with fee simple property rights" that was not encumbered by a lease. The MTT stated that a "fee simple estate is defined as 'Absolute ownership

-1-

unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power and escheat.' "[1] The MTT rejected respondent's method of valuation that was based on assuming a hypothetical lease for the subject property. The MTT stated in its opinion, "The subject's fee simple property rights in the context of market value does not contemplate the non-existent lease as prescribed by Respondent's appraiser."

Respondent now appeals.

## II. STANDARD OF REVIEW

This Court has limited authority to review a decision of the Tax Tribunal. *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). "In the absence of an allegation of fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong legal principle." *Id*. This Court will not disturb the tribunal's factual findings "as long as they are supported by competent, material, and substantial evidence on the whole record." *Id*. at 490-491. "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Meijer, Inc v Midland*, 240 Mich App 1, 5; 610 NW2d 242 (2000). "Failure to base a decision on competent, material, and substantial evidence constitutes an error of law requiring reversal." *Id*. "The appellant bears the burden of proof in an appeal from an assessment, decision, or order of the Tax Tribunal." *Drew v Cass Co*, 299 Mich App 495, 499; 830 NW2d 832 (2013) (quotation marks and citation omitted).

## III. BACKGROUND LAW

Under the General Property Tax Act (GPTA), MCL 211.1 *et seq*., assessments are "based on the property's true cash value." *Meijer*, 240 Mich App at 3; see also Const 1963, art 9, § 3; MCL 211.27a(1). "True cash value" means the "usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale." MCL 211.27(1). "True cash value is synonymous with fair market value." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998). "Therefore, the assessment must reflect the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007). "[T]o determine true cash value, the property must be assessed at its highest and best use . . . . Highest and best use is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use." *Menard, Inc v Escanaba*, 315 Mich App 512, 522; 891 NW2d 1 (2016) (alteration in original; emphasis, quotation marks, and citations omitted).

---

[1] The MTT quoted Appraisal Institute, *The Appraisal of Real Estate* (Chicago, 15th ed, 2020), pp 60-61.

While the petitioner has the burden of establishing the TCV of the property, Tax Tribunal proceedings are de novo and "the Tax Tribunal has a duty to make an independent determination of true cash value." *President Inn Props LLC v Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). In particular, the "Tax Tribunal is under a duty to apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Menard*, 315 Mich App at 521-522 (quotation marks and citation omitted). "The three most common approaches for determining true cash value are the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach." *Great Lakes*, 227 Mich App at 390. The "final value determination must represent the usual price for which the subject property would sell irrespective of the specific method employed." *Menard*, 315 Mich App at 523 (quotation marks and citation omitted).

## IV. ANALYSIS

Respondent first argues that the MTT committed an error of law or adopted a wrong legal principle by relying on an improper definition of the term "fee simple." Respondent argues that fee simple ownership includes the right to lease the property. However, respondent misunderstands the nature of the question at issue. The question is not whether petitioner, as owner of the property, has a right to lease the property to some other entity. Rather, the question is how to properly appraise the fair market value of the subject property owned by petitioner for purposes of property tax assessment.

Here, it is undisputed that the subject property consists of an owner-occupied big-box retail store. In this context, this Court has stated that a fee simple interest is " 'absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.' " *Autozone Stores Inc/Auto Zone, No 2137 v City of Warren*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2015 (Docket No. 320213), p 3, quoting *The Appraisal of Real Estate* (11th ed, p 137).[2] See also *Lowe's Home Centers, Inc v City of Grandville*, unpublished per curiam opinion of the Court of Appeals, issued December 30, 2014 (Docket No. 317986), p 2 n 1; *Lowes Home Centers, Inc v Marquette Twp*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2014 (Docket Nos. 314111, 314301), p 11 n 4. Hence, the definition used by the MTT in this case is the same as the definition this Court has previously employed in this specific context of real property appraisals of owner-occupied commercial retail store property for purposes of tax assessment. Respondent thus has not shown that the MTT committed an error of law or adopted a wrong legal principle with respect to its definition of the term "fee simple." *Mich Milk Producers Ass'n*, 242 Mich App at 490.

Respondent next argues that the MTT erred by rejecting respondent's valuation methodology that appeared to value the subject property as if it would be sold subject to an existing lease. This Court has held that for purposes of determining the TCV, "what must be valued is what would actually be sold." *Menard*, 315 Mich App at 526 n 5. Respondent does not contest

---

[2] Although not binding precedent, a court may consider unpublished opinions for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

the MTT's factual finding that the subject property was an owner-occupied big box store that was not encumbered by a lease. This Court has explained that under such circumstances, "the sale[] would be of the property without an existing lessee or operating retail business" and that the subject property must therefore "be valued as if vacant and available." *Id*. Respondent essentially contends, contrary to this Court's holding in *Menard*, that the subject property should have been valued as if it would be sold along with an existing lessee operating a retail business. Accordingly, this argument advanced by respondent does not demonstrate that the MTT committed an error of law or adopted a wrong legal principle; the MTT's approach was consistent with *Menard*. *Id*.; *Mich Milk Producers Ass'n*, 242 Mich App at 490.

Furthermore, to the extent respondent contends that the MTT's approach prohibited any consideration of leased properties as comparable properties in the valuation analysis, respondent again misunderstands the issue. Respondent potentially could have used sales of leased properties as a comparables if appropriate adjustments had been made. See *Autozone Stores*, unpub op at 4 ("By definition, a property that is subject to one or more leases is no longer a fee simple estate. Thus, if the sale of a leased property is to be used as a comparable sale in the valuation of the fee simple estate for another property, the sale can only be used if reasonable and supportable market adjustments for the difference in rights can be made.") (quotation marks and citation omitted).

However, respondent does not recognize the need for such adjustments since respondent apparently believes that the subject property should be valued as if an inherent feature of the property is the existence of an allegedly successful business tenant that would transfer to a new owner along with the real property. The "MTT may not determine a property's true cash value solely on the basis of its current use where such use bears no relationship to what a likely buyer would pay for the property[.]" *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 698; 840 NW2d 168 (2013) (quotation marks and citation omitted; alteration in original). At issue in this case is the valuation of petitioner's real property, not petitioner's business. Respondent's attempt to improperly conflate these two distinct concepts does not demonstrate that the MTT committed an error of law or adopted a wrong legal principle. *Mich Milk Producers Ass'n*, 242 Mich App at 490.

Next, respondent argues that the MTT failed to value the subject property at its highest and best use because the MTT's improper definition of fee simple led it to conclude that the subject property had to be treated as "vacant." This argument is essentially a reprise of respondent's position about the applicable definition of fee simple in this context. As we have already explained, the MTT did not commit an error of law or adopt a wrong legal principle in this respect. Under the circumstances presented in this case, the subject property was to be valued "as if vacant and available." *Menard*, 315 Mich App at 526 n 5.

Finally, respondent argues that the MTT erred by not determining the subject property's highest and best use to be continued retail operation and by rejecting the valuation methodology employed by respondent's expert. The MTT specifically found that the highest and best use of the subject property as improved was "its current retail building use." Respondent's appellate argument is unresponsive to the MTT's actual ruling in this respect. Furthermore, the MTT also found that the methodology of respondent's expert was not credible. The weighing of evidence and determinations of witness credibility are within the discretion of the MTT. *Great Lakes*, 227 Mich App at 404, 407. "We do not disturb the MTT's findings regarding the credibility of the

-4-

witnesses." *Detroit Lions*, 302 Mich App at 703. Respondent fails to address the deference accorded to the MTT as fact finder and instead seems to treat this appeal as an opportunity to relitigate its case, contrary to the limited scope of our appellate review. *Mich Milk Producers Ass'n*, 242 Mich App at 490. Respondent does not argue that the MTT's determination was not supported by competent, material, and substantial evidence, instead simply arguing for a different view of that evidence despite the limited scope of our appellate review. *Id*. Respondent cannot obtain appellate relief from the MTT's judgment on such a basis. *Detroit Lions*, 302 Mich App at 701-702 ("This Court may not substitute its judgment for that of the MTT, even if we would have reached a different result than the tribunal."). Respondent's argument does not demonstrate that the MTT committed an error of law or adopted a wrong legal principle. *Mich Milk Producers Ass'n*, 242 Mich App at 490.

Although respondent has purported to challenge the MTT's ruling on several grounds, respondent's arguments essentially boil down to an argument this Court has already rejected through the following analysis that we also find to be persuasive in the instant case:

> Respondent's argument on appeal that the exiting use of the subject property as improved should be as a "continuously-occupied, successful home improvement store" attempts to include in the property's TCV a measure of value attributable solely to the owner and the owner's use of the property.
>
> As our Supreme Court explained, "[t]he Constitution requires assessments to be made on property at its cash value. This means not only what may be put to valuable uses, but what has a recognizable pecuniary value inherent in itself, and not enhanced or diminished according to the person who owns or uses it." Therefore, even if the subject property is in fact continuously-occupied and successful, these characteristics of the property are not relevant for determining the property's TCV. They are accidents of ownership, not measures of value inherent to the property itself, and the tribunal did not misapply the law nor adopt a wrong principle by categorizing the existing use of the subject property as improved as commercial retail.
>
> For the same reasons, the tribunal did not err when it categorized the subject property's highest and best use (HBU) as improved as commercial retail rather than as a continuously-occupied, successful home improvement store. Highest and best use "recognizes that the use to which a prospective buyer would put the property will influence the price which the buyer would be willing to pay." Respondent's contention that the property's HBU is to continue its existing use as an operating home improvement store is another attempt to incorporate value-in-use, or use-value, into the calculation of the subject property's value, contrary to Michigan law. The HBU is informed by the existing use, but not by the specific use of a particular existing user.
>
> With respect to "present economic income," the tribunal concluded that the owner-occupied subject property was not an income-producing property and had no history of an income stream. However, respondent contends that the tribunal should have included the property's "actual income," i.e., customer sales receipts,

into its consideration of present economic income. This argument is irrelevant because, in the sales-comparison approach to valuing the fee simple interest of a subject property, TCV is based on the sale price of the property sold unencumbered by a lease or a tenant; i.e., as if the property were vacant and available. Vacant and available properties do not generate customer sales receipts. Therefore, the tribunal did not misapply the law or adopt a wrong principle when, in the context of the sale-approach valuation of the property, it did not consider the store's customer sales receipts. [*Grandville*, unpub op at 6-7 (citations and emphasis omitted).]

In the present case, respondent has not demonstrated that the MTT committed an error of law or adopted a wrong legal principle, and we therefore affirm.

Affirmed. Petitioner having prevailed is entitled to costs. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron