*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEIJER, INC.,

Petitioner-Appellant,

v

CITY OF FLAT ROCK,

Respondent-Appellee.

UNPUBLISHED
November 10, 2022

No. 358974
Tax Tribunal
LC No. 16-001205-TT

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Petitioner appeals by right the final opinion and judgment of the Michigan Tax Tribunal (the Tribunal) determining the true cash value (TCV) of real property located in Flat Rock, Michigan for the 2016 and 2017 tax years. We vacate the Tribunal's judgment and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The issue in this case is the proper calculation of the TCV of a "big box" store located in Flat Rock.[1] The property consists of 25 acres of land containing a 157,352-square-foot big box store and a 2,500-square-foot convenience store. The property was built, owned, and occupied by petitioner for retail business. It is not clear when construction started, but as of December 31, 2015, construction was approximately 50% complete. Construction was completed sometime in mid-2016, with the store opening for business in August 2016.

Petitioner appealed the ad valorem property tax assessments levied by respondent for the 2016 and 2017 tax years. A hearing before the Tribunal was held, at which each party presented the testimony of competing valuation experts. The focus was the valuation of the completed property as of December 31, 2016. After hearing the testimony of the parties' experts, the Tribunal noted that it had a duty to apply its own expertise in determining the appropriate method of arriving

---

[1] The term "big box store" refers to a store with 80,000 square feet or more.

at a TCV valuation. The Tribunal determined that neither the sales-comparison approach nor the income approach was appropriate for valuing the newly-built construction and that the cost approach was the most accurate method. The Tribunal also noted that the buildings on the property were "built for [petitioner's] specific requirements," and if sold, the new owner would have to perform some "reconfigurations for its own branding." The Tribunal's calculation of the TCV using the cost approach made no deduction for functional obsolescence. This appeal followed.

## II. STANDARD OF REVIEW

This Court's review of a decision of the Tax Tribunal is limited. *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). "In the absence of fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong legal principle." *Id*. "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Id*. at 490-491.

## III. ANALYSIS

Petitioner argues that the Tribunal erred by not including any deduction for functional obsolescence in its TCV calculation. We agree.

MCL 211.27a(1) requires Michigan property to be assessed at 50% of TCV. TCV is defined in MCL 211.27(1), in pertinent part, as "the usual selling price at the place where the property to which the term is applied is at the time of the assessment, being the price that could be obtained for the property at private sale." Therefore, the TCV of real property reflects the property's market value as a whole and not merely the sum of the value of its components. *First Federal S&L Ass'n v City of Flint*, 415 Mich 702, 707; 329 NW2d 755 (1982).

There are three traditional methods of determining TCV: "(1) the cost-less-depreciation approach, (2) the sales-comparison or market approach, and (3) the capitalization-of-income approach." *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 484-485; 473 NW2d 636 (1991). "It is the Tax Tribunal's duty to determine which approaches are useful in providing the most accurate valuation under the individual circumstances of each case." *Id*. at 485. The Tribunal has no obligation to accept the valuation or approach to valuation used by any party; indeed, it has a duty to make an independent determination of true cash value by use of the most accurate valuation approach under the individual circumstances of the case. *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011).

In this case, the Tribunal held that the cost-less-depreciation approach was the most accurate method of valuation. Petitioner does not challenge the Tribunal's use of this valuation method; rather, petitioner argues that the trial court erred by failing to account for functional obsolescence in calculating the property's TCV. Under the cost approach, the TCV of property is calculated by adding the estimated land value to the estimated replacement cost of improvements on that land, "and then deducting the loss in value from depreciation in structures, i.e. physical deterioration and functional or economic obsolescence." *Meadowlanes*, 437 Mich at 484 n 18. At issue in this case is the Tribunal's decision not to deduct any amount for functional obsolescence, which is defined as "a loss in value brought about by failure or inability to deliver full service"

and "includes any loss of value by reason of shortcomings or undesirable features contained within the property itself." *Teledyne Continental Motors v Muskegon Twp*, 145 Mich App 749, 755; 378 NW2d 590 (1985).[2] In simple terms, functional obsolescence in this case represents "the cost of modifying the buildings for use by another retailer if the buildings were leased or sold." *Meijer, Inc v City of Midland*, 240 Mich App 1, 6; 610 NW2d 242 (2000).

Relying on this Court's decision in *Meijer*, petitioner argues that the Tribunal's decision to afford no deduction for obsolescence constitutes the application of an incorrect legal principle. We agree. In *Meijer*, this Court held that the Tribunal had committed legal error in determining the TCV of the subject property under the cost approach when it failed to include a deduction for functional obsolescence despite finding "that the subject property includes improvements that have utility only to Petitioner and that a typical buyer in the market place would incur considerable modification costs." *Meijer*, 240 Mich App at 6-7. In making this holding, this Court relied on *Teledyne*, which held:

> Clearly, the replacement cost approach does eliminate the need to calculate some types of functional obsolescence. By definition, replacement cost eliminates functional obsolescence due to excess construction or superadequacy. However, a determination of other sources of functional obsolescence, not caused by excess construction, must at least be considered in the replacement cost approach. In the present case, the tribunal ruled that all functional obsolescence is eliminated by use of the replacement cost approach. This amounts to an adoption of the wrong appraisal principle. The tribunal should have specifically determined whether the sources claimed as functional obsolescence by the petitioner are in fact eliminated by use of the replacement cost approach. [*Id*. at 6, quoting *Teledyne*, 145 Mich App at 756.]

The case before us is similar to *Meijer*, and it compels the same result. The Tribunal did not specifically find that all functional obsolescence was eliminated by the use of the replacement-cost approach, but instead merely found that "Petitioner's obsolescence was not appropriate because it was based upon comparables that were not appropriately comparable to the subject property." This mirrors the error in *Meijer*, in which the Tribunal declined to account for obsolescence because it found that the petitioner's calculation of obsolescence was "unrealistic and derived from inappropriate market data." *Meijer*, 240 Mich App at 6. This Court held that although the petitioner's calculation of obsolescence was flawed, the tribunal nonetheless had the obligation to make "its own determination of the functional obsolescence due to modification costs." *Id*. at 7.

In this case, the tribunal acknowledged that the subject property was owner-occupied, was "built for its specific requirements," and if sold, the new owner would have to perform some "reconfigurations for its own branding." "This is the type of functional obsolescence that is not eliminated by adoption of the replacement cost approach." *Id*. Under *Meijer*, once the Tribunal

---

[2] External obsolescence, or economic obsolescence, on the other hand, is the loss in value as a result of factors outside the boundaries of the property. *Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572, 591; 854 NW2d 172 (2014).

finds that a typical buyer in the marketplace would incur modification costs, it is not free to wholly reject petitioner's claim for functional obsolescence without making its own determination of how much functional obsolescence should be deducted. *Id*. at 8. Accordingly, we vacate the Tribunal's judgment and remand to the Tribunal "to make an independent determination of how much functional obsolescence exists due to modification costs." *Id*.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola