*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD M. BATTANI, JR.,

        Petitioner-Appellant,

UNPUBLISHED
December 21, 2023

v

ALMONT TOWNSHIP,

        Respondent-Appellee.

No. 364723
Tax Tribunal
LC No. 21-000518-TT

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Petitioner appeals as of right the Tax Tribunal's final opinion and judgment determining the true cash value (TCV), the state equalized value (SEV) and the taxable value (TV) of petitioner's real property in Almont, Michigan for the 2021 and 2022 tax years. We affirm.

## I. FACTUAL BACKGROUND

The issue in this case is whether a 16-foot wide by 64.5-foot long area in the middle of the second level of a house should be classified as a "story" and living space, or as an "attic" and not living space.[1] The property consists of 21.91 acres of land containing a 31-foot wide by 64.5-foot long frame house over a full basement with walk out, an attached garage, and a pole barn. The property is classified as agricultural.

Petitioner purchased the property in 2018 for $120,000. At that time, there were no buildings on the land. A permit was pulled for a pole barn in 2018. Several permits were pulled in 2018-2019 for a house with an attached garage. Respondent's representatives visited the subject property in August 2019 to measure the home for assessment purposes during the construction

---

[1] The area in question runs the entire length of the house, but only half of the width. Respondent concedes that the home has "an attic area in the area above the first floor ceiling assembly and the roof outside, to the right and left of the second story area given the fact there is 15 feet of area under the roof, above the first floor and outside of the second story."

phase.  The 2020 TV was $153,009.  At that time, the pole barn was complete and the house was 30% complete.

In April 2020, petitioner requested an occupancy permit.  The final inspection was completed in August 2020, and the certificate of occupancy was issued on October 21, 2020.  On October 27, 2020, Tom Valentine, the Almont Township Assessor, sent petitioner a letter requesting an opportunity to inspect the interior of the home to assist with the assessment of petitioner's "new home."[2]  Valentine stated that he was "particularly interested in the upper level of the home."  Valentine noted "there may be some difference of opinion as to the use, intention and value of the space above the first floor and under the roof."  On November 10, 2020, Valentine sent petitioner a letter informing him that he would be visiting the subject property on November 24, 2020 for an interior and exterior inspection.  Once again, Valentine stated that he was "particularly interested in the upper level of the home" and wanted "to come to a clear understanding of the assessment status of this space."  Petitioner declined to grant Valentine access to the interior of the house.  Petitioner maintained that the disputed area on the second level was an attic, stating that it was "unfinished, truss only with no insulation, or drywall."  However, petitioner told Valentine to "[l]et [him] know if [he] had any specific questions regarding the interior space."

Valentine informed petitioner that he would rely on the information he gathered during his December 2019 visit to the property, at which time petitioner was installing insulation throughout the home, including the second level.  Valentine further stated:

> The second level subfloor had been installed because we walked on it.  The second level is heated because of the large open stairway (8 ft. wide) at the end of the room allowing heat to rise from the first floor. . . . It is my opinion the upper level is a recreation room and possible bedroom in the bonus room over the garage.

Petitioner protested Valentine's characterization of the second level:

> Per my response during the March board of review:  The upper level did NOT have insulation during your visit other than the stairway which would be open to lower level and are therefore treated as exterior walls.  The "open doorway" for heat was also an assumption made as there were not yet ANY doors installed on the interior of the home at that time.  There is an exterior fire door installed as the top of that stairway upon completion.  Again, the upper level is not insulated and is closed off from the first floor.  It is utilized as storage space only.

Valentine conducted an exterior inspection of the home on November 24, 2020.

Following his exterior inspection, Valentine utilized a cost less depreciation method to determine the market value of the subject parcel.  This method included economic condition factor

---

[2] Valentine's letter was erroneously sent to the petitioner's previous address and erroneously referenced the home he formerly owned at that address.

(ECF) calculations,[3] with a consumer price index (CPI) factor of 1.014, to determine the value of the residence as $355,796 and the pole barn as $50,111.[4] He used a land value of $123,916, which was derived from a sales study and reflected on the property record card. Based on these calculations, the 2021 TCV was determined to be $529,823, and the 2021 SEV and TV were set at $264,900.

Petitioner, proceeding *in propria persona*, challenged the assessment values to the township's board of review. Petitioner maintained that the TCV should be $333,357 and the TV should be $166,678. The board of review denied the petition, finding that the assessment was accurate. Petitioner appealed to the Tax Tribunal, once again asserting that the TCV should be $333,357 and the TV should be $166,678. In response, respondent asserted that "the market value, assessed value and taxable value are accurate, fair and equitable with surrounding similar parcels." Both parties filed evidence in support of their positions, and a hearing was held.

The core dispute was the valuation of the property and whether the subject area on the second level constituted an attic or a story. Respondent argued that the cost less depreciation method was the most accurate method to determine the value of the subject property as of December 31, 2020. Most of petitioner's argument focused on characterizing the second level as an uninhabitable attic. Petitioner maintained that the home value should be $119,275 less $1,747 for the assessment of a wood stove, which was not present in the home. His valuation method used a square foot value that he obtained from the assessor's manual, which was multiplied by

---

[3] "An ECF adjusts the assessor's use of the Assessors Manual to the local market." State Tax Commission, *Michigan Assessors Manual*, Volume III (February 2018), ch. 3, p. 40. According to the Assessors Manual:

> Most mass appraisal models rely on a cost-less-depreciation approach and adjust its results to what properties are selling for through the use of an ECF. The ECF is prepared by analyzing properties which have sold and then comparing their respective cost-less depreciation of the buildings (i.e., building value) to that portion of the sale prices attributable to those buildings.
>
> * * *
>
> An ECF is developed by analyzing verified property true cash value level sale prices. The portion of each sale price attributed to the building(s) only on the parcel is compared to the value on the record card of the same building(s). The ECF represents the relationship between the appraised value of the building and calculated using the Assessors Manual and its respective building value (i.e., the sale value of that building). When the building value is added to the value of the land and the land improvements, an indication of true cash value is developed for assessment purposes.

[4] Because there were not enough sales for comparable agricultural properties, Valentine utilized larger acre residential property sales for his ECF calculations.

1,086 square feet.[5] Petitioner further asserted that the land value was $121,680, which was the $120,000 land purchase price multiplied by a CPI factor of 1.014. And he used the depreciated cost multiplied by a CPI factor of 1.014 for his asserted value of $43,578 for the pole barn. Based on these calculations, petitioner maintained that the TCV[6] should be $282,786 and the TV $141,393, which were lower than the amounts he asserted in his petition to the board of review and his petition to the Tax Tribunal. Petitioner did not present an appraisal, expert testimony, or estimates regarding valuation.

After considering the evidence and testimony, the Tax Tribunal concluded that the house was correctly assessed as 1.5 story based on the following pertinent facts that it determined were proven by a preponderance of the evidence:

11. The Michigan Residential Building Code defines "story" as "that portion of a building included between the upper surface of a floor and the upper surface of the floor or roof next above."

12. The Michigan Residential Building Code defines "attic" as the "unfinished space between the ceiling assembly and the roof assembly."

13. The portion which Petitioner contends is attic space has insulation, electric wiring, windows, and a subfloor. Permanent stairs lead to this area.

14. The portion which Petitioner contends is attic space has trusses and no drywall.

15. The second story of the subject property house which has a floor, electric wiring, windows, and insulation with full access to a permanent stairway does not qualify as an attic by the building code.

The Tax Tribunal noted that it had a duty to apply its own expertise in determining the appropriate method of arriving at a TCV valuation. The Tax Tribunal afforded lesser weight to petitioner's valuation data because "it did not conform to generally accepted methods for determining valuation." The Tax Tribunal found respondent's valuation method more persuasive and thus afforded more weight to respondent's valuation evidence, which was based on the cost-less-depreciation approach. However, the Tax Tribunal held that respondent had no proof that the property had a wood-burning stove and ordered that the value be adjusted accordingly. The Tax Tribunal ordered that the property's TCV, SEV, and TV for 2021 and 2022 be:

| Year | TCV | SEV | TV |
| --- | --- | --- | --- |
| 2021 | $527,800 | $263,900 | $264,900 |
| 2022 | $630,000 | $315,000 | $273,641 |

---

[5] Petitioner maintained this square footage figure was the habitable space of the home.

[6] Petitioner appears to have mislabeled TCV as "ACV" and TV as "TCV."

Petitioner moved for reconsideration, which was denied.[7] This appeal followed.

## II. STANDARD OF REVIEW

Our review of a Tax Tribunal decision is limited. *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). In the absence of fraud, we review the Tax Tribunal's decision for "misapplication of the law or adoption of a wrong principle." *EldenBrady v City of Albion*, 294 Mich App 251, 254; 816 NW2d 449 (2011) (cleaned up). "[F]actual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Benedict v Dep't of Treasury*, 236 Mich App 559, 563; 601 NW2d 151 (1999) (cleaned up). "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Meijer, Inc v Midland*, 240 Mich App 1, 5; 610 NW2d 242 (2000).

## III. TRUE CASH VALUE

Petitioner argues that the second level of the home is an unfinished, uninhabitable attic and thus it was improperly assessed as a habitable recreation room. We disagree.

Under the General Property Tax Act, MCL 211.1 et seq., assessments are "based on the property's true cash value." *Meijer*, 240 Mich App at 3; see also Const 1963, art 9, § 3; MCL 211.27a(1). Property is assessed at 50% of its TCV. MCL 211.27a(1). TCV is defined in MCL 211.27(1), in pertinent part, as "the usual selling price at the place where the property to which the term applied is at the time of assessment, being the price that could be obtained for the property at private sale . . . ." TCV "is synonymous with fair market value." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998). "Therefore, the assessment must reflect the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007). A property "must be assessed at its highest and best use" to determine TCV. *Menard, Inc v Escanaba*, 315 Mich App 512, 522; 891 NW2d 1 (2016) (cleaned up). " 'Highest and best use' is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use." *Id*. (cleaned up).

In this case, the highest and best use of the subject property is not in contention. However, the parties dispute the valuation methodologies to be employed and the data relevant to the valuation. A petitioner bears the burden of proving the TCV of the property, MCL 205.737(3), but the de novo nature of Tax Tribunal proceedings requires the Tribunal "to make an independent determination of true cash value." *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). TCV is determined by three commonly accepted methods: "(1) the cost-less-depreciation approach, (2) the sales-comparison or market approach, and (3) the capitalization-of-income approach." *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*,

---

[7] Petitioner's motion included a September 14, 2020 private appraisal. Because the appraisal was not submitted 21 days before the Tax Tribunal hearing, the Tax Tribunal refused to consider the appraisal in ruling on the motion for reconsideration.

437 Mich 473, 484-485; 473 NW2d 636 (1991). "It is the Tax Tribunal's duty to determine which approaches are useful in providing the most accurate valuation under the individual circumstances of each case." *Id*. at 485. "The Tax Tribunal is not bound to accept the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination of true cash value." *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 389-390. In reaching its decision, the Tax Tribunal is not required to "quantify every possible factor affecting value," *id*. at 398-399, and the "weight to be accorded to the evidence is within the Tax Tribunal's discretion," *id*. at 404.

In this case, determining the valuation of the property requires resolution of whether the house is properly assessed as a 1.5 story structure. Petitioner argues that there is sufficient evidence in the record to establish that the subject area on the second level is an unfinished attic space, not a habitable recreation room and thus the house should be assessed as a 1.4 story structure. The Tax Tribunal concluded that the subject area constitutes a story, not an attic:

> Petitioner contends that this portion of the property is an "attic" and not living space, providing photographs of an area with trusses and no drywall, whereas Respondent, relying on building code definitions of "attic" and "story" asserts that it is properly classified as a "story" and living space. Here, although photographic evidence indicates a room with a window, it has no drywall and only truss, and the definitions of attic and story, along with the evidence of electric wiring, insulation, sub floor and permanent stairs,[ ] support the contention that this portion of the structure constitutes a story and not an attic.[ ]

The record reflects that the subject area is located in the middle of the second level of the house, is half the width of the house, and runs the full length of the house. There is an eight-foot wide permanent staircase that leads from the first floor to the second level. According to Valentine, "[t]here is a large picture window at the end of the room opposite the stairway beside a hallway that leads to the bonus room over the garage."[8] Valentine opined that the subject area was "a large recreation room." Petitioner argued to the Tax Tribunal that the picture window "was a $200 clearance item used for lighting" and "exterior decor." He further asserted that insulation was only installed in the ground floor ceiling and surrounding stairway, which was "closed off by [a] fire door." He also maintained that the electric wiring in the subject area was for " 'keyless' fixtures as found in most attic spaces."

The Tax Tribunal found that the Michigan Residential Building Code defines "story" as "that portion of a building included between the upper surface of a floor and the upper surface of the floor or roof next above" and defines "attic" as the "unfinished space between the ceiling assembly and the roof assembly." The Tax Tribunal recognized that the subject area had trusses and no drywall, but was persuaded by the fact that there was "evidence of electric wiring, insulation, sub floor and permanent stairs" in determining that the space constituted a story, not an attic. The weight given to the evidence is within the discretion of the Tax Tribunal *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 404, and we will not assess witness credibility, *Id*. at

---

[8] Petitioner does not dispute this description.

407. The Tax Tribunal's factual findings are supported by "competent, material, and substantial evidence on the whole record" and thus we must accept them. *Benedict*, 236 Mich App at 563.

Petitioner does not dispute that respondent's approach using an ECF was a reliable method of determining value, nor has he identified any error in the calculation of the ECF.[9]  Instead, petitioner simply asserts that his approach, which did not comport with any of the three recognized methods of valuation, would have been better.  The Tax Tribunal did not make an error of law or adopt an erroneous principle when it declined to consider petitioner's valuation analysis in determining the parcel's TCV.  The Tax Tribunal is not bound to accept a party's theory of valuation.  *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 389-390.  The Tax Tribunal must employ its own expertise to the facts of the case to determine which approach provides the most accurate valuation.  See *Meadowlanes*, 437 Mich at 484-485; *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 400.

Petitioner further maintains that the Tax Tribunal should have considered the private appraisal that he filed with his motion for reconsideration.  Consistent with Tax Tribunal Rule 792.10287(1),[10] the hearing notice clearly instructed the parties to submit all documents in support of their contentions at least 21 days before the hearing.  The parties were warned that untimely filed documents may be excluded.  Rule 792.10287(1) supports the Tax Tribunal's decision not to consider the appraisal proffered by petitioner after the scheduled hearing took place.

Petitioner also contends that the Tax Tribunal erred in failing to give any weight to his evidence that the township's building inspector referred to the second level as an "attic."  Petitioner submitted two "field inspection slips" to the Tax Tribunal.  The first slip, dated July 1, 2020, included handwritten notes that stated "attic is unfinished with limited storage area as defined by Code Chapter 2."  The second slip, dated August 12, 2020, directed petitioner to "submit amended doc's [sic] on upper unfinished uninhabitable attic."  The Tax Tribunal did not find this evidence dispositive on the issue whether respondent's representative determined that the subject area was an attic, stating that it was "not supported by any credible documentary evidence or properly explained as to context in which it was allegedly said, and most would be considered hearsay."  While "[t]he rules of evidence must be followed as far as practicable" in proceedings before the

---

[9] The Assessors Manual discusses use of a cost-less-depreciation approach, adjusted using an ECF. State Tax Commission, *Michigan Assessors Manual*, Volume III (February 2018), ch. 3, p. 40. Although it does not have the force of law, the Assessors Manual may be used as a guide. See MCL 211.10e; *Danse Corp v Madison Hts*, 466 Mich 175, 181-182; 644 NW2d 721 (2002).

[10] Tax Tribunal Rule 792.10287(1) provides:

> A copy of all evidence to be offered in support of a party's contentions shall be filed with the tribunal and served upon the opposing party or parties not less than 21 days before the date of the scheduled hearing, unless otherwise provided by the tribunal.  Failure to comply with this subrule may result in the exclusion of the valuation disclosure or other written evidence at the time of the hearing because the opposing party or parties may have been denied the opportunity to adequately consider and evaluate the valuation disclosure or other written evidence before the date of the scheduled hearing.  [Mich Admin Code, R 792.10287(1).]

Tax Tribunal, "the tribunal 'may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.' " *Georgetown Place Co-op v City of Taylor*, 226 Mich App 33, 52; 572 NW2d 232, 239–40 (1997), quoting MCL 205.746(1). But the weight given to the evidence is the Tax Tribunal's discretionary decision. *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 404. And we will not second-guess that discretionary decision. See *Drew v Cass County*, 299 Mich App 495, 501; 830 NW2d 832 (2013) (cleaned up) ("A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result.")

IV.  DUE PROCESS

Petitioner also argues that the 10-minute limit on his presentation at the Tax Tribunal hearing deprived him of a reasonable opportunity to submit evidence pursuant to MCL 205.746 and deprived him of a reasonable opportunity to be heard in violation of his due process rights. We disagree.

The United States and Michigan constitutions prevent the taking of property without due process of law. Const 1963, art 1, § 17; US Const, Am V. Because an owner of real property has a significant interest in property, he is entitled to due process protection with respect to the assessment and collection of property taxes. *Brandon Twp v Tomkow*, 211 Mich App 275, 282–283; 535 NW2d 268 (1995). "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

The Tax Tribunal hearing was initially scheduled as a telephone hearing. Petitioner filed a request for an in-person hearing, which was granted. The hearing notice informed the parties that "[h]earings are generally 30 minutes in length." The notice stated that the parties could call witnesses in support of their case at the hearing, but warned that "the time to present your case is limited and additional time may not be provided to accommodate witness testimony." The parties were further instructed to submit all documents in support of their contentions at least 21 days before the hearing and were warned that untimely filed documents may be excluded. The notice also advised parties that they had the right to have an attorney or anyone else they chose to represent them at the hearing. Consistent with this notice, petitioner states that the Tax Tribunal held a 30-minute in-person hearing. According to petitioner, each party was afforded 10 minutes to present their case, and 10 minutes was reserved for questions. Pursuant to MCL 205.746, the parties were afforded an opportunity to file documents in support of their position. As reflected in the Tax Tribunal's opinion and order, petitioner timely submitted 38 exhibits in support of his arguments, and respondent submitted 33 exhibits.

Petitioner simply argues that the hearing limit was insufficient for him to present his case because "as a lay person [he] was not familiar with Tribunal procedures or the presumption of correctness of the assessment which he had to overcome." Petitioner chose to represent himself at the hearing. Although pro se litigants are typically afford a degree of leniency, a party's status as a pro se litigant does not excuse them from complying with procedural requirements. *Bachor v Detroit*, 49 Mich App 507, 512; 212 NW2d 302 (1973) ("Appearance in pro per does not excuse all application of court rules . . . ."). Ignorance of the law is no excuse, even for pro se litigants.

*Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 488; 822 NW2d 239 (2012).  We find no merit in petitioner's argument.  He was afforded notice of the hearing, an opportunity to be heard, and an impartial decision maker.  See *Cummings*, 210 Mich App at 253.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel