*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WAL-MART REAL ESTATE BUSINESS TRUST,

        Petitioner-Appellee,

v

TOWNSHIP OF MADISON,

        Respondent-Appellant.

UNPUBLISHED
September 23, 2024
11:11 AM

No. 366222
Tax Tribunal
LC No. 20-002388-TT

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this property-tax matter, respondent, Madison Township, appeals as of right the Tax Tribunal's final opinion and judgment determining the true cash value (TCV) of real property located in Lenawee County. At issue is the tribunal's determination that the property's TCV was $5,035,000 as of December 31, 2019, and $5,000,000 as of December 31, 2020. We affirm.

The primary issue is the proper valuation of the TCV of a "big box" store located in Madison Township.[1] The property is a Wal-Mart Supercenter and consists of 28.5 acres of land containing a 201,888-square-foot big box store. The property was built, owned, and occupied by petitioner, Wal-Mart Real Estate Business Trust (Wal-Mart) for retail business. The building was originally built in 1992 and had a square footage of 121,000, but in 2004, 80,000 square feet were added.

Wal-Mart appealed the ad valorem property tax assessments levied by respondent for the 2020 and 2021 tax years. A trial was held at which only two witnesses testified: Wal-Mart's expert, Laurence Allen, and respondent's expert, John Widmer. While Widmer provided valuations as of December 31, 2019, and December 31, 2020, Allen only provided an opinion on the value of the property as of December 31, 2019.

---

[1] The term "big box store" generally refers to a store with 80,000 square feet or more.

-1-

At the close of Wal-Mart's proofs, respondent moved for a directed verdict with respect to the 2021 tax year. Respondent's attorney stated:

> [B]efore it begins its case[,] Respondent moves for a directed verdict pursuant to MCR 2.516 as to the 2021 tax year. Pursuant to MCR 2.516 a party may move for a directed verdict at the close of the evidence offered by an opponent.
>
> In the case of [*Kroll v Katz*, 374 Mich 364; 132 NW2d 27 (1965)], the Michigan Supreme Court held that the test for a directed verdict is whether when reviewing the facts in the light most favorable to the Petitioner reasonable men could honestly reach a different conclusion. If the answer to this question is yes, the question is for the Court to resolve. Conversely, if it were impossible to reach a different conclusion, the Court should grant directed verdict for the moving party.
>
> * * *
>
> Petitioner chose to amend its petition to add the 2021 tax year to this appeal, forced Respondent to incur the cost of having the property appraised, and has offered zero evidence to support its claim that the property was overassessed for the 2021 tax year.

The tribunal declined to allow Wal-Mart to respond to the motion and instead took the motion under advisement and allowed respondent to proceed with its case.

The three traditional approaches to determining TCV are the sales-comparison approach, the income approach, and the cost approach. Both Allen and Widmer used these three approaches for determining TCV as of December 31, 2019. Using the sales-comparison approach, Allen derived a value of $4,850,000, while Widmer derived a value of $8,560,000. Using the income approach, Allen calculated a value of $4,630,000, and Widmer calculated a value of $8,860,000. Finally for the 2020 tax year, under the cost approach, Allen derived a value of $4,670,000, and Widmer derived a value of $10,630,000. Notably, in the sales approach, when calculating the adjusted sales price for those comparables, Widmer added a positive adjustment of 25% if the comparable was vacant and available.[2]

When reconciling their calculations from the three different approaches, Allen placed most weight on the sales-comparison approach because in his view it is the most accurate and reliable method of calculating TCV. As a result, Allen valuated the property at $4,800,000 as of December 31, 2019. Widmer, on the other hand, gave equal weight to the three valuation approaches and calculated the TCV of the property as of December 31, 2019, as being $9,340,000. For the 2021 tax year, Widmer opined that the TCV of the property had slightly decreased to $9,320,000.

The tribunal addressed respondent's motion for directed verdict in its final opinion and judgment and denied the motion, ruling that "reasonable minds could differ regarding whether the

---

[2] Widmer had five sales in this sales-comparison approach, and four of the five sales received that positive 25% adjustment because they were vacant when sold.

2021 tax year's assessment was incorrect." Regarding the task of arriving at a TCV valuation, the tribunal noted that it has a duty to apply its own expertise in determining the appropriate method. The tribunal relied on the sales-comparison approach because it found that the cost approach and income approach were not as appropriate.

The tribunal noted that for the 10 comparable sales Allen used, it was going to disregard Sales 1, 2, and 9, as those were not suitable comparisons. Consequently, the adjusted sale price per square foot for Allen's remaining seven comparables ranged from $18.90 to $31.56.[3] Regarding the sales comparables Widmer used, the tribunal found that the positive 25% adjustment Widmer made for properties that were vacant was contrary to law and those adjustments were removed. This made the range of the adjusted price per square foot of Widmer's five sales $30.12 to $39.87. With no further explanation, the tribunal concluded that the fee simple TCV of the property was $5,035,000 as of December 31, 2019, and $5,000,000 as of December 31, 2020.

## I. STANDARD OF REVIEW

This Court's review of a decision of the Tax Tribunal is limited. *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). In the absence of fraud, "this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong legal principle." *Id*. "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Id*. at 490-491. This Court reviews questions of law de novo. *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023).

## II. ADEQUACY OF FINDINGS

Respondent argues that the tribunal erred when it did not provide sufficient detail on how it arrived at its TCV determinations.

The tribunal found that the Wal-Mart building occupied 201,888 square feet. Regarding the TCV determination, the tribunal found, in pertinent part:

> The Tribunal finds that Petitioner's sales comparison approach's rate per sq ft ranges from $16.19 [sic—$18.09, see note 4 of this opinion] to $39.30 [sic—$31.56, see note 4 of this opinion] and Respondent's sales comparison approach ranges from $30.12 to $39.87, based on size, location, and age. The Tribunal finds that the sales comparison approach is the best method to determine the TCV of the subject property.

---

[3] Although there was one discrepancy in the tribunal's opinion regarding the correct range of rates, the tribunal did correctly note that the applicable range of the adjusted price per square foot of Allen's considered comparables is $18.09 to $31.56.

The Tribunal finds the fee simple TCV of the 20-year-old big-box store located in Madison Township is $5,035,000, as of December 31, 2019, for tax year 2020.

Dividing the $5,035,000 TCV by the building's 201,888 square footage results in a TCV of $24.94 per square foot. While the TCV appears to be reasonable in light of the data presented, especially by Allen, respondent is correct that it is difficult to ascertain how the tribunal arrived at this value. Although respondent claims that this lack of detail violates MCL 205.751(1) and requires a remand, MCL 205.751(1) only requires that a decision and opinion of the tribunal "shall include a concise statement of facts and conclusions of law." Here, there is no question that the tribunal provided a statement of facts and conclusions of law. The pertinent question is whether the tribunal was required to do more in order to "show its work" as respondent asserts.

Respondent cites *Granader v Southfield Twp*, 145 Mich App 585; 377 NW2d 893 (1985), where the tribunal rendered a decision that provided "no underlying reasons or findings for the final determination of true cash value." *Id*. at 588-589. This Court, while citing the principle that "[m]erely stating that the tribunal has reviewed the evidence and finds it to be insufficient as a basis for relief is *not* adequate," remanded for the tribunal to make more explicit findings. *Id*.; see also *Plymouth Twp v Wayne Co Bd of Comm'rs*, 137 Mich App 738, 756; 359 NW2d 547 (1984). "Only if the decisions of the tribunal contain the factual and legal basis of the determination will appellate review be meaningful." *Granader*, 145 Mich App at 588.

However, when the tribunal's valuation is within the range of valuations in evidence, that valuation necessarily is supported by competent and material evidence. *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 642; 806 NW2d 342 (2011). Thus, although it would have been more desirable for the tribunal to have expounded on how it arrived at its ultimate valuation, that preference does not control. Notably, respondent does not address *President Inn Props* in its reply brief, and unlike *Granader*, *President Inn Props* is binding. See MCR 7.215(J)(1); *Secura Ins Co v Stamp*, 341 Mich App 574, 581 n 5; 991 NW2d 244 (2022). In this instance, the price per square foot from the experts' considered sales comparables ranged from $18.09 to $39.78. Clearly, the tribunal's final determination of a price per square foot of $24.94 falls squarely within the range of evidence. We therefore reject respondent's argument.

We stress that this ruling does not mean that this Court must *always* affirm a valuation as long as it falls within the range the evidence supports. For instance, if the tribunal commits an error of law, such as respondent suggests in its second issue, then that could be adequate to reverse, despite any ultimate conclusion falling within the range of evidence. See *President Inn Props*, 291 Mich App at 643 (stating that even if an error occurs, reversal is not warranted unless there is prejudice); *Mich Milk Producers*, 242 Mich App at 490 (stating that this Court's review is limited to whether the tribunal committed an error of law or adopted the wrong legal principle). But for *this* issue, the only argument we address is whether the tribunal's findings of fact and conclusions of law were adequate, and we hold that they were.

## III. VACANT AND AVAILABLE

Respondent next argues that the tribunal committed an error of law when it valued the property as vacant and available.

At the outset, it should be noted that this "issue" seems to encompass two different aspects. One is the legal question whether properties must be valued as if vacant and available and the other aspect is whether the tribunal erred when it discounted Widmer's positive 25% adjustments made to properties that were vacant and available at the time they were sold.

Regarding the legal question, the tribunal did not err. MCL 211.27(1) defines TCV as

the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale.

"TCV is the equivalent of the property's fair market value." *Menard, Inc v City of Escanaba*, 315 Mich App 512, 522; 891 NW2d 1 (2016). This Court has held that "because the subject property was owner occupied, it must be valued as if vacant and available." *Id*. at 526 n 5. That is because "what must be valued is what would actually be sold." *Id*. And what is being contemplated for sale in this instance is a fee simple interest with no existing lessee or operating retail business. See *id*. Thus, while MCL 211.27(1) does not directly reference a "vacant and available" status, the fact that a fee simple interest is being contemplated does implicate that requirement. Accordingly, with the tribunal committing no error of law, there is no ground to reverse.

The other aspect of this issue is more nuanced. Widmer, while applying adjustments to his sale comparables, added a positive 25% adjustment to any comparable that was vacant at the time of its sale, which was four of the five comparables Widmer had. Widmer explained that such economic adjustments are needed to reflect the "vacancy status" of Sales 1 through 4, and was "intended to display what the value of a property would be at the subject's market rent, and what it would be if, in fact, the buyer of that property had incurred the loss of rent, carry costs, commissions to secure a tenant." Later, Widmer stated that the 25% adjustment was "[t]o reflect the occupancy of the subject" and had nothing to do with being occupied by a tenant. However, Widmer also testified that even if the Wal-Mart property had been vacant at the time of the valuation dates, he could not say whether he would have applied the 25% adjustments to the vacant comparables. Widmer ultimately admitted on cross-examination that his adjustment effectively *did not value the subject property as if it were vacant and available*. Therefore, with Widmer's concession, the tribunal's decision to remove or omit the 25% adjustments was supported by competent, material, and substantial evidence and was not contrary to law.

IV. RESPONDENT'S MOTION FOR DIRECTED VERDICT

Respondent argues that the tribunal reviewed its motion for directed verdict under an incorrect standard because the tribunal should have treated it as one for involuntary dismissal.

Under MCR 2.516, "A party may move for a directed verdict at the close of the evidence offered by an opponent." Similarly, under MCR 2.504(B)(2):

In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that on the facts and the law,

-5-

the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence.

Although the plain language of MCR 2.516 does not limit motions for directed verdicts to jury trials, this Court has noted that "[a] motion for a directed verdict is more properly made in a jury trial, while a motion to dismiss is used in a bench trial." *Stanton v Dachille*, 186 Mich App 247, 261; 463 NW2d 479 (1990). "The difference between the 2 motions is that on the latter motion a trial judge may weigh the evidence before him, unlike a motion for a directed verdict, where the trial judge's only task is to determine if there is no issue of fact raised by plaintiff's evidence for the jury to decide." *Smith v Dep't of Street R, Detroit*, 46 Mich App 291, 292 n 1; 207 NW2d 924 (1973); see also *Williamstown Twp v Hudson*, 311 Mich App 276, 287; 874 NW2d 419 (2015).

There is no question that after the close of Wal-Mart's proofs, respondent moved for a directed verdict under MCR 2.516, as it moved for a "directed verdict" and cited both "MCR 2.516" and *Kroll*, 374 Mich 364, for the appropriate standard for such a motion. Despite clearly and unequivocally requesting a directed verdict, respondent on appeal argues that the tribunal should have nonetheless treated the motion as one for involuntary dismissal. As sole authority for its position, respondent relies on *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636; 534 NW2d 217 (1995).

In *Samuel D Begola*, after the plaintiff presented its evidence in the bench trial, the defendants moved for a "directed verdict," and the trial court granted the motion. *Id*. at 638. The plaintiff appealed to this Court, where this Court noted that it was treating the motion as one for involuntary dismissal because that type of motion is appropriate in a bench trial, as opposed to a jury trial. *Id*. at 639. But nowhere did this Court hold that a trial court is to sua sponte view a motion for directed verdict as one for involuntary dismissal. Because the trial court granted the motion, this Court concluded that it would review the motion under the more appropriate standard. Thus, *Samuel D Begola* does not require a trial court or tribunal to sua sponte correct a party's motion or to sua sponte treat a party's motion other than what it is.

Again, respondent moved for a directed verdict, and the tribunal denied the motion. Although the tribunal analyzed the motion under the directed verdict standard (as requested by respondent),[4] the motion could have also been denied because, as respondent freely admits, a motion for directed verdict is inappropriate in a bench-trial setting. In either event, the tribunal properly denied respondent's motion on the merits.

---

[4] In our view, respondent's actions also implicate waiver. When a trial court takes an action that is requested by a party, a party cannot then complain about the action on appeal. See *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995) ("[A] party cannot request a certain action of the trial court and then argue on appeal that the action was error.").

## V. HIGHEST AND BEST USE

Respondent lastly argues that remand is necessary because the tribunal failed to identify the property's highest and best use.

The concept of highest and best use of property is fundamental to the determination of its TCV. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 697; 840 NW2d 168 (2013). When determining a property's TCV, "the property must be assessed at its highest and best use." *Huron Ridge, LP v Ypsilanti Twp*, 275 Mich App 23, 33; 737 NW2d 187 (2007). "Highest and best use recognizes that the use to which a prospective buyer would put the property will influence the price which the buyer would be willing to pay." *Id.* (quotation marks and citation omitted).

In its findings of fact, the tribunal found the following:

> 20. Mr. Allen's highest and best use is as retail use for both owner/users and developers.

> 21. Mr. Widmer's highest and best use is a single user, big-box retail user.

These findings are supported by the record and are not challenged on appeal. The tribunal made no other explicit findings with regard to the subject property's highest and best use.

For at least two reasons we reject respondent's argument that the tribunal had an obligation to specify what it determined to be the highest and best use. First, respondent cites no authority *requiring* the tribunal to explicitly reference a highest and best use. Second, because Widmer's highest and best use is wholly subsumed in Allen's highest and best use, it seems implicit that, by default, the tribunal used Allen's broader view of highest and best use. This view is supported by the record because, by relying on both experts' sales comparables, the tribunal seemingly was accepting a common highest and best use, and only Allen's highest and best use accomplished that.

Moreover, Widmer admitted at trial that regardless of whether highest and best use was "single-user retail use" or "retail use," the calculations in his sales approach *would not have been any different*.[5] Thus, with Widmer testifying that his sales-comparison valuation would not be affected by whichever version of highest and best use the tribunal used, respondent has failed to show how any error in failing to explicitly identify the highest and best use caused any prejudice. See *President Inn Props*, 291 Mich App at 643 (stating that even if an error occurs, reversal is not warranted unless there is prejudice).

---

[5] Widmer also testified that his cost approach valuations would not have been any different. But because the tribunal only relied on the parties' sales-comparison approaches, that fact is irrelevant.

Affirmed.  Wal-Mart, as the prevailing party, may tax costs pursuant to MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado